**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CAPITOL SPECIALTY INSURANCE CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 1:10-cv-02079-ESH |
| v. | ) ) | Assigned to: Huvelle, Ellen S. |
| SANFORD WITTELS & HEISLER, LLP; and | ) ) ) | Assign Date: 12/8/2010 |
| DAVID SANFORD, | ) ) | Description: Contract |
| Defendants. | ) ) ) | |

**PLAINTIFF CAPITOL SPECIALTY INSURANCE CORPORATION'S**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff Capitol Specialty Insurance Corporation ("CSIC"), by and through its

undersigned counsel, and pursuant to Fed. R. Civ. P. 56, hereby moves for summary judgment.

Specifically, CSIC seeks a judicial declaration that it has no obligation under Lawyers

Professional Liability Insurance Policy No. 0303-7637 (the "Policy") to defend or indemnify

Sanford Wittels & Heisler, LLP (the "Firm") and David Sanford ("Sanford") in the lawsuit

styled *Howard, et al. v. Sanford Wittels & Heisler, LLP, et al.*, No. 2010-ca-00311-M (Super.

Ct., D.C.) (the "Malpractice Action").  As set forth in the materials accompanying this motion,

the Policy affords no coverage for the Malpractice Action for two separate and independent

reasons.  First, all express conditions precedent to coverage have not and cannot be satisfied

because of the Firm's and Sanford's indisputable knowledge of their admitted negligence

underlying the Malpractice Action prior to the inception of the Policy.  Second, the insureds

made a false warranty to CSIC, the result of which is no coverage for the Malpractice Action.

As set forth in the materials accompanying this motion, there are no material facts in dispute and

CSIC is entitled to judgment as a matter of law.

Filed with this motion, and incorporated by reference herein, are the following:

- Memorandum of Points and Authorities in Support of Capitol Specialty Insurance Corporation's Motion for Summary Judgment;

- Capitol Specialty Insurance Corporation's Statement of Material Facts as to Which There is No Genuine Dispute;

- Declaration of Marc E. Rindner; and

- Proposed Order.

WHEREFORE, Plaintiff CSIC respectfully requests that this Court grant its Motion for

Summary Judgment.


Dated:  February 18, 2011                    Respectfully submitted,



                                             /s/ *Marc E. Rindner*_____
                                             Richard A. Simpson
                                             (D.C. Bar No. 411893)
                                             Marc E. Rindner
                                             (D.C. Bar No. 461250)
                                             WILEY REIN, LLP
                                             1776 K Street, NW
                                             Washington, D.C.  20006
                                             Telephone (202) 719-7000
                                             Facsimile (202) 719-7049

                                             *Counsel for Plaintiff Capitol Specialty*
                                             *Insurance Corporation*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CAPITOL SPECIALTY INSURANCE CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 1:10-cv-02079-ESH |
| v. | ) ) | Assigned to: Huvelle, Ellen S. |
| SANFORD WITTELS & HEISLER, LLP; and | ) ) ) | Assign Date: 12/8/2010 |
| DAVID SANFORD, | ) ) | Description: Contract |
| Defendants. | ) ) ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CAPITOL SPECIALTY INSURANCE CORPORATION'S <u>MOTION FOR SUMMARY JUDGMENT</u>

Richard A. Simpson
(D.C. Bar No. 411893)
Marc E. Rindner
(D.C. Bar No. 461250)
WILEY REIN, LLP
1776 K Street, NW
Washington, D.C.  20006
Telephone (202) 719-7000
Facsimile (202) 719-7049

*Counsel for Plaintiff Capitol Specialty Insurance Corporation*

I.      **<u>INTRODUCTION</u>**

This is an insurance coverage dispute arising under a claims made and reported lawyers professional liability policy (the "Policy") issued by Capitol Specialty Insurance Corporation ("CSIC") to the law firm of Sanford Wittels & Heisler, LLP (the "Firm").  The Firm, along with one of its named partners, David Sanford ("Sanford"), seek coverage for a suit alleging malpractice based on the Firm's admitted failure to file a class certification motion on time.  The Policy does not provide coverage for this **Claim** for two separate and independent reasons, both of which are established as a matter of law based on the undisputed material facts.[1]

First, the Policy's Insuring Agreement requires as a "condition precedent" to coverage that, "prior to the inception date of the first policy issued by [CSIC] if continuously renewed, no **Insured** had any basis (1) to believe that any **Insured** had breached a professional duty; or (2) to foresee that any such act or omission or **Related Act or Omission** might reasonably be expected to be the basis of a **Claim** against any **Insured**" (the "Prior Knowledge Condition").  Here, before the December 10, 2007 inception date of the first policy issued by CSIC and continuously renewed, the Firm's mistake in failing to file a motion for class certification on time had been called to its attention and the Firm had admitted its error.

Specifically, on March 17, 2006, defendants in the underlying case in which the Firm represented an alleged class of plaintiffs filed a motion to strike the class claims on the ground that the Firm had not filed a motion for class certification within the time permitted by the applicable court rules.  The court granted that motion on February 6, 2007.  Two weeks later, on February 21, 2007, the Firm filed a motion seeking to extend the time for filing the class certification motion.  As part of that effort, Sanford submitted a sworn declaration squarely

---

[1] Terms in bold are defined in the Policy.

placing the blame for the missed deadline on the Firm, admitting that it had "inadvertently neglected" to file the motion for class certification within the required time period.  On September 7, 2007, the court denied the motion to reinstate the class claims, stating in its order that there was "no excuse beyond attorney mistake" for the failure to meet the applicable deadline.  Based on these undisputed facts, the Prior Knowledge Condition to coverage is not satisfied.

Second, despite the Firm's and Sanford's indisputable knowledge of their failure to file the class certification motion on time, the Firm submitted a written application for coverage to CSIC on November 1, 2007, in which the Firm represented that, "[a]fter enquiry," no attorney of the Firm was "aware of any circumstances . . . as to any incident which may result in a claim." Following this inaccurate representation, the Firm submitted a signed written statement, dated December 6, 2007, in which it warranted to CSIC that "after diligent inquiry of all attorneys proposed [to be insured]," the Firm "is not aware of . . . any facts, incidents, circumstances, acts, errors or omissions that could give rise to a claim against any attorney of the [Firm]."  In this same statement, the Firm also expressly acknowledged that "no coverage [would] be available under [the Policy] for any claim, suit, incident, or other circumstance which should have been disclosed."  The Firm's admitted mistake in missing the deadline to move for class certification should have been disclosed, and the Firm's failure to do so precludes coverage for the resulting malpractice action as a matter of law.

## II.   FACTUAL BACKGROUND

The material facts presented by CSIC's motion for summary judgment are not in dispute – indeed, they are conclusively established by court records and other documents of unquestionable authenticity, which are attached as exhibits to the accompanying Declaration of

Marc E. Rindner.  These documents, which are designated herein as [Ex. __.], include, among

other things, the Policy issued by CSIC, the Firm's application for coverage and warranty

statement and certain filings in the underlying actions.[2]

### A.      The Underlying Employment Action and the Firm's Admitted Mistake

In January 2004, Janet Howard and a number of other government employees

(collectively, "Howard" or the "Clients") retained the Firm to serve as "Class Counsel" for a

putative class of individuals who allegedly were victims of racially discriminatory employment

practices by the United States Department of Commerce (the "Department").  [Ex. 1, Underlying

Employment Action Complaint.]   In this capacity, on October 5, 2005, the Firm filed a "Class

Action Complaint" against the Department in the suit styled *Howard, et al. v. Gutierrez*, No.

1:05-cv-1968-JDB (D.D.C.) (the "Underlying Employment Action").  [*Id.*]  The Firm explicitly

framed the suit as a class action under Rule 23 of the Federal Rules of Civil Procedure.  [*Id.* at ¶¶

253 to 271.]

On March 17, 2006, the Department moved to "strike all class claims" asserted in the

Underlying Employment Action on the grounds that Howard "failed to comply with Local Rule

23.1(b)," which requires that:  "Within 90 days after the filing of a complaint in a case sought to

be maintained as a class action, unless the court in the exercise of its discretion has extended this

period, the plaintiff *shall* move for a certification . . . that the case may be so maintained."  [Ex.

2, Motion to Strike at 61.]  On June 23, 2006, the Firm sought to extend the period to move for

class certification.  [Ex. 3, Motion for Enlargement of Time.]  The court rejected that request

and, on February 6, 2007, "grant[ed] the motion to strike the class allegations because [the

Howard] plaintiffs . . . failed timely to move for class certification."  [Ex. 4, 2/6/07

---

[2] Out of an abundance of caution, CSIC has redacted from these documents information that the Firm may consider confidential.  CSIC, however, has no objection to the Firm's disclosure of these documents in their entirety.

Memorandum Opinion at 1.]  In rendering its decision, the court directly addressed the Firm's

"error," first finding that the Firm had been on notice of its failure to comply with the filing

deadline no later than March 17, 2006, but nonetheless "waited . . . another three months . . .

before even filing a motion for an extension of time."  [*Id.* at 24.]  The court then chastised the

Firm:

> Although [counsel] stated at the motions hearing that their delay was "a mistake"
> – a reason that does not usually constitute excusable neglect . . . – this Court
> wonders why a party acting diligently and in good faith would wait three
> additional months after being alerted to a missed deadline before attempting to
> mitigate the error.

[*Id.* at 24-25.]

On February 21, 2007, the Firm filed a motion to reinstate the class claims or,

alternatively, for certification for an interlocutory appeal.  [Ex. 5, Motion to Reinstate Class

Claims.]   In support of the motion, the Firm submitted a declaration from Sanford in which he

attested under the headings of "Excusable Neglect" and "Inadvertence" that:

- "In the fall and winter of 2005, [the Firm] was a relatively small civil rights firm: during that time period, there were a total of four attorneys in the Firm's Washington D.C. office . . . ."

- "Shortly before filing the Class Action Complaint on October 5, 2005, the [Firm] associate assigned to the Commerce matter resigned from the Firm.  The new attorney hired to replace that associate was assigned to this matter and, in addition numerous other matters in the Firm."

- "In the fall and winter of 2005, I [Sanford] was engaged in other class matters around the United States . . . ."

- "For these reasons, my Firm inadvertently neglected to file a motion within 90 days of the original Class Complaint for class certification or a motion for an extension of time."

[Ex. 5, Motion to Reinstate Class Claims at Exhibit One ¶¶ 19-22.]  The court denied this motion

on September 7, 2007, specifically finding that "the fact remains that [the Howard] plaintiffs

have no excuse beyond attorney mistake for their failure to file a timely motion for class

certification." [Ex. 6, 9/7/07 Order at 5.]

>   **B.**   **The Firm's Application for Insurance Coverage**

On the heels of this unsuccessful attempt to overcome its mistake in the Underlying

Employment Action, the Firm applied to CSIC for insurance coverage. While the Firm had been

insured by CSIC in 2004, that coverage was not renewed in 2005 or 2006, during which period

the Firm was insured by another unrelated carrier. [Ex. 7, Thompson Declaration at ¶ 3.]

The Firm submitted to CSIC a written application for coverage signed by named partner

Jeremy Heisler ("Heisler") and dated November 1, 2007 ("Written Application").[3] [Ex. 7B,

Written Application at 7.] Question 6(b) on this application asked:

> After enquiry, are any persons listed in Supplement 1 aware of any circumstances,
> allegations, tolling agreements or contentions as to any incident which may result
> in a claim being made against the Applicant or any of its past or present Owners,
> Partners, Shareholders, Corporate Officers, Associates, Employed Lawyers,
> Contract Lawyers or Employees or its predecessors in business?

[*Id*. at 6.] The Firm answered "no." [*Id*.] The Firm also submitted with the Written Application

two "Claims Update Forms," which provided certain information regarding two matters against

the Firm and its attorneys that had been reported to the Firm's previous insurance carrier. [*Id*. at

14-16.] Neither of these matters related to the Underlying Employment Action or the Firm's

failure to file a timely motion for class certification. [*Id.*] Above the signature line, the Written

Application provided:

> The Applicant declares and warrants that, after enquiry, to the best knowledge of
> all persons to be insured the statements set forth herein and in any attachments
> made hereto are true and no material facts have been [suppressed] omitted or
> misstated. [CSIC] reserve[s] the right to deny or rescind coverage on any Policy

---

[3] The application is entitled: "Renewal Application for Lawyers Professional Liability Insurance 'With Certain
Underwriters at Lloyd's.'" [Ex. 7B.] CSIC agreed to accept Lloyd's renewal form application in lieu of its own.
[Ex. 7A, Policy, Endorsement No. 3.]

that is issued as a result of this [a]pplication if, in the statements set forth herein and in any attachment made hereto is found that material information has been omitted, [suppressed] or misstated . . . .

[*Id.* at 7.]

The Firm also submitted in support of its application a "Warranty Statement" executed by

Heisler on December 6, 2007, which stated:

…after diligent inquiry of all attorneys proposed for this insurance, [the Firm] warrants that as of December 6, 2007, all claims or suits, as well as facts, incidents, circumstances, acts, errors or omissions that could give rise to a claim have been reported to our previous insurance carriers.

It is also warranted that after diligent inquiry of all attorneys proposed for this insurance, that as of December 6, 2007 the [Firm] is not aware of any claims or suits, or any facts, incidents, circumstances, acts, errors or omissions that could give rise to a claim against any attorney of the firm, the firm or its predecessors.

[Ex. 7C, Warranty Statement.]  The Warranty Statement further provided that:

Sanford Wittels & Heisler, LLP acknowledges that no coverage will be available under insurance placed by [CSIC] for any claim, suit, incident, or other circumstance which should have been disclosed.

[*Id.*]

C.     **The Policy Issued by CSIC to the Firm**

Based on the information provided by the Firm, including the Written Application and

the Warranty Statement, CSIC issued Policy No. 0303-7637 to the Firm for the **Policy Period** of

December 10, 2007 to December 10, 2008.  [Ex. 7A, Policy.]  As set forth in the "Insuring

Agreement," the Policy provides specified coverage for:

all amounts in excess of the retention shown in the Declarations that an **Insured** becomes legally obligated to pay as **Damages** and **Claim Expenses** because of a **Claim** that is made and reported to the **Company** during the **Policy Period** or any extended reporting period.

[Ex. 7A, Policy, Section I.A.]  The Insuring Agreement, as amended by Endorsement 2, further

specifies that:

[i]t is a condition precedent to coverage under this policy that the act or omission occurred:

1.       during the **Policy Period**; or

2.       on or after December 10, 2004, provided that all of the following three conditions are met . . . (b) prior to the inception of the first policy issued by [CSIC] if continuously renewed, no **Insured** had any basis (1) to believe that any **Insured** had breached a professional duty; or (2) to foresee that any such act or omission or **Related Act or Omission** might reasonably be expected to be the basis of a **Claim** against any **Insured** . . .

[*Id.*]   As noted above, the second of these conditions is referred to here as the "Prior Knowledge Condition."

The Policy defines "**Insured**" in relevant part to mean the **Named Insured** – *i.e.*, the Firm – and "any lawyer or professional corporation listed in the application on the day the **Policy Period** incepts."  [Ex. 7A, Policy, Declarations Item 1 and Section VI.G and J.]  Sanford and Heisler, among others, are listed as attorneys of the Firm in Supplement 1 to the Written Application.  [Ex. 7B, Written Application at 8.]  The Policy also provides that:

> **Application** means the application submitted to the **Company** [*i.e.*, CSIC] or any of its agents for this Policy, all prior applications submitted to the **Company** or any of its agents for prior policies issued by [CSIC] to the **Named Insured** and any and all materials and information submitted to or obtained by the **Company** in connection with such applications, including all statements made by the **Insured** or their agents or brokers, all of which are deemed to be on file with the **Company** and are deemed to be attached to, and form part of this Policy, as if physically attached.

[Ex. 7A, Policy, Section VI.A. and Endorsement No. 3.]

### D.    <u>The Malpractice Action Against the Firm and Its Tender to CSIC</u>

On April 4, 2008 – just four months after the Policy incepted – the Firm provided **Notice** to CSIC of a potential **Claim** in connection with its error in the Underlying Employment Action.[4]

---

[4] Under the Policy, if any **Insured** provides **Notice** during the **Policy Period** of "any act or omission or circumstance that may reasonably be expected to be the basis of a **Claim**, . . . [a]ny such **Claim** that is subsequently made against the **Insured** and promptly reported to [CSIC] shall be deemed to have been made and reported at the time such **Notice** was given."  [Ex. 7A, Policy, Section V.B.3.]

[Ex. 7D, 4/8/08 Fax.]   Two years later, that potential **Claim** developed into an actual **Claim** when, on January 21, 2010, a number of the Clients initiated the action captioned *Howard, et al. v. Sanford Wittels & Heisler, LLP, et al.*, No. 2010-ca-00311-M (Super. Ct., D.C.) (the "Malpractice Action"), which names as defendants the Firm and Sanford, as well as one other attorney who is not a member of the Firm.  [Ex. 8, Malpractice Action Complaint; Ex. 7F, 2/19/10 Fax.]  Based on the Firm's admitted mistake in failing to timely move for class certification in the Underlying Employment Action and the resulting permanent loss of their class claims, the Clients assert causes of action against the Firm and Sanford for "Professional Negligence" and "Breach of Contract."  [*Id.* at ¶ 40-49.]

CSIC has advised the Firm that coverage is not available under the Policy for the Malpractice Action because of the failure of the conditions precedent set forth in the Insuring Agreement and the breach of the Warranty Statement.  [Ex. 9, 11/8/10 Letter.]   CSIC further has advised, however, that it is defending the suit subject to a complete reservation of rights and pending the resolution of this action by CSIC seeking, among other relief, a declaration of no coverage.  [*Id.*; Ex. 7E, 5/7/08 Letter; Ex. 7G, 3/23/10 Letter; Ex. 7H, 5/11/10 Letter.]

## III.   <u>ARGUMENT</u>

### A.   <u>Applicable Legal Standards</u>

Summary judgment is proper when the pleadings and evidence before the Court show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Cases involving the interpretation of an insurance policy are particularly appropriate for summary disposition, because the construction of an insurance policy – as with any contract – is a question of law to be determined by the Court.  *See Rubins Contractors, Inc. v. Lumbermens Mut. Ins. Co.*, 821 F.2d 671, 673 (D.C. Cir. 1987); *Sigmund v. Progressive N. Ins. Co.*, 374 F. Supp. 2d 33,

36 (D.D.C. 2005); *In re Corriea*, 719 A.2d 1234, 1239 (D.C. 1998); *see also Cameron v. USAA*

*Prop. & Cas. Ins. Co.*, 733 A.2d 965, 968 (D.C. 1999) (under District of Columbia law, because

"[a]n insurance policy is a contract between the insured and insurer," the basic rules of contract

interpretation apply).  In this regard, where the provisions of an insurance policy are clear and

unambiguous and do not violate public policy, the Court must enforce them as written.  *See Nat'l*

*R.R. Passenger Corp. v. Lexington Ins. Co.*, 445 F. Supp. 2d 37, 41 (D.D.C. 2006); *Chase v.*

*State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1132 (D.C. 2001).

**B.      Coverage Is Not Triggered for the Malpractice Action Because of the
Failure to Satisfy All Conditions Precedent**

The Policy's Insuring Agreement sets forth a number of "conditions precedent" to

coverage.  [Ex. 7A, Policy, Section I.A.]  A condition precedent is a fact or event that must exist

or occur before a duty of performance arises under a contract.  *See In re Estate of Drake*, 4 A.3d

450, 452 n.2 (D.C. 2010); *Washington Props. v. Chin Inc.*, 760 A.2d 546, 547 (D.C. 2000).

Coverage under an insurance policy is not "triggered" unless and until "all conditions precedent .

. . have been satisfied."  *See St. Paul Fire & Marine Ins. Co. v. Children's Hosp. Nat'l Med. Ctr.*,

670 F. Supp. 393, 397 n.8 (D.D.C. 1987).  Here, coverage is not triggered for the Malpractice

Action because the Prior Knowledge Condition is not and cannot be satisfied.

**1.      The Prior Knowledge Condition Is Unambiguous and Proper**

The Policy is a claims made and reported policy, which provides coverage for **Claims**

made against an **Insured** and reported to CSIC within the **Policy Period**.   It is well settled that

an insurer issuing a claims made policy acts reasonably in not providing coverage for alleged

wrongful acts that an insured knew or should have known might be the basis for a claim before

the policy was issued.  *See Ross*, *v. Cont'l Cas. Co.*, 420 B.R. 43, 53-54 (D.D.C. 2009), *aff'd*

2010 WL 3721542, No. 09-7166 (D.C. Cir. Sept. 22, 2010) (citing *Truck Ins. Exch. v. Ashland*

*Oil, Inc.*, 951 F.2d 787, 790 (7th Cir. 1992) ("the exclusion from a claims-[made] policy of claims based on conduct that occurred before the policy was issued and that was known to have claim potential is uncontroversially proper")); *see also* Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 35:14, at 84 (2008) ("Mallen") ("a predicate to claims-made coverage is that the insured neither knew of a claim nor could have reasonably foreseen that a known circumstance, act or omission might reasonably be expected to be the basis of a claim or suit"). This Court further has noted that, "[an] insurance company is entitled to protect itself against the professional who, recognizing his past error or omission, rushes to purchase a 'claims-made' policy before the error is discovered and a claim is asserted against him." *See Ross*, 420 B.R. at 54 (quoting *Zuckerman v. Nat'l Union Fire Ins. Co.*, 495 A.2d 395, 403-04 n.3 (N.J. 1985)).

Precisely to address this legitimate concern, the Prior Knowledge Condition expressly conditions coverage for any **Claim** on the fact that prior to the inception of the first continuously renewed policy issued by CSIC, no **Insured** had any basis either to believe that any **Insured** had breached a professional duty or to foresee that an act or omission might reasonably be expected to be the basis of a **Claim** against any **Insured**.  [Ex. 7A, Policy, Section I.A.2.]  Courts construing substantially similar policy language have found such language to be unambiguous and proper, including a recent decision by this Court that was affirmed on appeal.  *Ross*, 420 B.R. at 54 (concluding that a substantially similar provision was "not ambiguous on its face nor . . . against public policy").[5]

---

[5] *See also, e.g., Selko v. Home Ins. Co.*, 139 F.3d 146, 151-52 (3d Cir. 1998); *Prof'l Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 224 (5th Cir. 1986); *Bryan Bros., Inc. v. Cont'l Cas. Co.*, 704 F. Supp. 2d 537, 541 (E.D. Va. 2010); *Tewell, Thorpe & Findlay, Inc. v. Cont'l Cas. Co.*, 825 P.2d 724, 727 (Wash. Ct. App. 1992); *Bellefonte Ins. Co. v. Albert*, 472 N.Y.S.2d 635, 636-37 (App. Div. 1984).

### 2.      **The Prior Knowledge Condition Is Not and Cannot be Met**

The Prior Knowledge Condition is keyed off of the "inception date of the first policy issued by [CSIC] if continuously renewed."  [Ex. 7A, Policy, Section I.A.2.]  Because the Policy issued by CSIC is not a renewal of any prior policy issued by CSIC to the Firm, its inception date controls.  As such, the determinative issue is the knowledge possessed by any **Insured** prior to December 10, 2007 – specifically, whether an **Insured** had a basis:

(1)      to believe any **Insured** had breached a professional duty; *or*

(2)      to foresee that an act or omission might reasonably be expected to be the basis of a **Claim** against any **Insured**.

[Ex. 7A, Policy, Section I.A.2.]   These two categories of information are stated in the disjunctive, and therefore knowledge by an **Insured** of *either* defeats satisfaction of the condition.   Here, the Firm and Sanford – each an **Insured** under the Policy – indisputably possessed the knowledge contemplated by *both*.

First, the Firm and Sanford clearly had a basis before December 10, 2007 to believe – and, indeed, actually knew – that they had breached a professional duty by failing to move for class certification in the Underlying Employment Action within the time prescribed.  Missing a mandatory deadline is a quintessential breach of duty.  *See Cameron v. Washington Metro. Area Transit Auth.*, 649 A.2d 291, 294 (D.C. 1994) (an attorney "has a duty to pay attention to filing deadlines and not to let one go by in any pending case without doing whatever needs to be done"); *O'Neil v. Bergan*, 452 A.2d 337, 341-42 (D.C. 1982) ("allowing the statute of limitations to run on the client's claim" is an example of "obvious" malpractice) (citation omitted); *see also In re Belmar*, 319 B.R. 748, 754-755 (Bankr. D.D.C. 2004) (concluding as a matter of law, and without the need for expert testimony, that attorneys for a Chapter 7 debtor "breached

[applicable] standard of care by failing to timely file an opposition [to stay relief motion] or seek an extension of time in which to file an opposition").

The fact that the Firm and Sanford committed this breach of professional duty was identified for them no later than March 17, 2006, when the missed deadline served as the basis for the Department's motion to strike the class claims in the Underlying Employment Action. Moreover, Sanford admitted that the Firm had "neglected" to comply with the 90-day filing deadline in a sworn declaration submitted to the court in the Underlying Employment Action on February 21, 2007.  And, on two separate occasions – both pre-dating the inception of the Policy by several months – the court in the Underlying Employment Action identified the unmitigated "error" and "attorney mistake" by the Firm and Sanford with regard to the missed deadline as grounds for ruling against their Clients.  *See Worth v. Tamarack Am.*, 47 F. Supp. 2d 1087, 1095 (S.D. Ind. 1999)  ("We harbor no reluctance in concluding that [the insured attorney] had a reasonable basis to believe, at or before the time the policy became effective, that he breached a professional duty to [his client] when he failed both to comply with [the deadline for perfecting service on the government] and to offer a good faith excuse for doing so, resulting in [the] dismissal of [the] action."), *aff'd* 210 F.3d 377 (7th Cir. 2000).[6]

Second, the Firm and Sanford plainly had a basis before December 10, 2007 to foresee that their act or omission in failing to file timely for class certification in the Underlying Employment Action might reasonably be expected to give rise to a **Claim** against any **Insured**.[7]

---

[6] The district court in *Worth* further noted:  "It is a mind-numbing exercise in fathoming how a reasonable attorney could read our June 26, 1992 dismissal of the [a]ction, which we wrote in unequivocal language, and not be on notice that his failure to comply with a straightforward federal rule of civil procedure constituted a breach of professional duty to his/her client."  *See* 47 F. Supp. 2d at 1098.

[7] One court applying similar policy language has observed:  "A breach of a professional duty and a basis for a claim are . . . 'two peas in a pod.'  If the former occurs, experience teaches us that the latter can be expected to follow." *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 307 n.3 (3d Cir. 2001).

As this Court has previously recognized, "whether the . . . defendants could reasonably have foreseen [a] claim is an objective test that can be determined as a matter of law." *See Ross*, 420 B.R. at 49 (citing *Westport Ins. Corp. v. Lilley*, 292 F. Supp. 2d 165, 171 (D. Me. 2003)).  The analysis turns on "the objective understanding of a reasonable attorney" in possession of the facts of which the **Insureds** were aware at the relevant time.  *See id.*

   In this regard, the Firm and Sanford unquestionably knew that they had missed the filing deadline for class certification in the Underlying Employment Action and that their Clients' class claims were lost as a result.  The Firm and Sanford further knew that their belated efforts to mitigate their error had failed and that they had been publicly chastised by the court for their mistake and lack of diligence.  Objectively viewed from the standpoint of a reasonable attorney, these facts "[lead] ineluctably to the conclusion that a malpractice claim against [the Firm and/or Sanford] was a reasonably foreseeable event." *See Ross*, 420 B.R. at 55 (failure to file timely answer resulting in default judgment against client constituted events that "might reasonably have been expected to be the basis of legal malpractice claim"); *Home Indem. Co. v. Toombs*, 910 F. Supp. 1569, 1580 (N.D. Ga. 1995) (attorney who voluntarily dismissed client's case and filed in another court after statute of limitations had run, resulting in judgment against the client, had reason to foresee a potential claim by the client); *Liberty Surplus Ins. Corp. Inc. v. Nowell Amoroso, P.A.* 916 A.2d 440, 447 (N.J. 2007) (attorney who knew that he had missed a statute of limitations on a client's claim had reason to foresee a potential malpractice claim).  *See also* Mallen, § 34:14, at 87 ("Knowledge of a missed time limitation . . . is a circumstance that often leads to a claim.").

   Because of this knowledge indisputably possessed by the Firm and Sanford prior to the inception of the Policy concerning their admitted mistake and breach of professional duty

underlying the Malpractice Action, the Prior Knowledge Condition is not and cannot be satisfied. As a result, coverage under the Policy for the Malpractice Action is not triggered.

### C.   The Breach of Warranty Precludes Coverage for the Malpractice Action

Coverage also is not available for the Malpractice Action because of the Firm's breach of warranty.  The facts material to this point are likewise beyond dispute.

### 1.   Coverage Is Barred as a Result of the Firm's Failure to Disclose Its Admitted Error Underlying the Malpractice Action

In response to Question 6(b) in the Written Application dated November 1, 2007, the Firm warranted to CSIC that "[a]fter enquiry," none of its attorneys was "aware of any circumstances . . . as to any incident which may result in claim being made against [the Firm] or any of its [attorneys]."  [Ex. 7B, Written Application at 6.]  Similarly, in the Warranty Statement, the Firm warranted to CSIC that "after diligent inquiry of all attorneys proposed for this insurance, that as of December 6, 2007 the [Firm] is not aware of any . . . acts, errors or omissions that could give rise to a claim against any attorney of the [Firm], the [Firm] or its predecessors."  [Ex. 7C, Warranty Statement.]  The Warranty Statement further provided that the Firm acknowledged that coverage was not available for any claim, suit or incident that should have been disclosed.  [*Id.*]  This Warranty Statement along with the Written Application are incorporated into and form part of the Policy.  [Ex. 7A, Policy, Section VI.A. (defining **Application**) and Endorsement No. 3.]

There appears to be no case law in the District of Columbia specifically addressing warranties in the context of insurance coverage.  Nonetheless, basic principles of contract law govern, including the rule that clear and unambiguous provisions in the parties' agreement must be enforced as written.  *See Nat'l R.R. Passenger Corp.*, 445 F. Supp. 2d at 41; *Chase*, 780 A.2d at 1132.  In this regard, the Warranty Statement expressly states the agreed upon result in the

-14-

event the warranty is breached by the Firm: coverage is excluded for any matter that should have been disclosed but was not.  Moreover, this result is consistent with case law from other jurisdictions, which recognizes that "an affirmative warranty," such as those provided by the Firm to CSIC here, "is a condition precedent to the validity of the policy; if the warranty is broken in its inception, the policy never attaches to the risk which it purports to cover."  *See Butcher v. Gulf Ins. Co.*, No. C-03-3553, 2005 WL 1514086, at *9 (N.D. Cal. June 15, 2005) (quoting *Bennett v. Nw. Nat'l Ins. Co.*, 257 P. 586, 589 (Cal. Dist. Ct. App. 1927)); *D&S Realty Inc. v. Markel Ins. Co.*, 789 N.W.2d 1, 15 n.46 (Neb. 2010) ("An affirmative warranty is one which asserts an existing fact or condition, and appears on the face of the policy, or is attached thereto and made a part thereof.  As a general rule, it is in the nature of a condition precedent to the validity of the policy, and if broken in its inception the policy never attaches.") (citing Couch on Insurance 3d § 83:13).

Here, the condition precedent to coverage under the Policy embodied in the twice-stated warranty by the Firm regarding knowledge of an act, error or omission that could give rise to a **Claim** indisputably was broken.  As set forth above, at the time the Firm executed the Written Application on November 1, 2007 and provided the Warranty Statement on December 6, 2007, the Firm and Sanford were aware of the circumstances concerning their admitted error in failing to file a timely motion for class certification in the Underlying Employment Action and objectively should have known that those circumstances could give rise to a **Claim**.  Such circumstances therefore "should have been disclosed," and because they are the same circumstances that unquestionably form the basis for the Malpractice Action, no coverage is available for that **Claim** under the Policy – precisely the result acknowledged by the Firm when it executed the Warranty Statement.  [Ex. 7C, Warranty Statement.]

-15-

2.      **Even if the Rescission Statute Applied, the Result Would be the Same**

The breach of warranty is grounds for denying coverage for the Malpractice Action. CSIC is not seeking to rescind the Policy or otherwise undo its contract altogether with the Firm based on the falsity of statements by the Firm in its application for coverage. As such, D.C. Code § 31-4314 does not apply. *See Ross*, 420 B.R. at 56 ("Section 31-4314 is inapplicable to the circumstances of this denial of coverage case, which does not involve a rescission of the policy"). Nonetheless, even if the statute did apply, the undisputed facts here establish that its requirements are met as a matter of law.

Under Section 31-4314, "an insurance company can rescind a policy as a result of a false statement in the application for insurance if the statement 'materially affected either the acceptance of the risk or the hazard assumed by company.'"[8] *See Ross*, 2010 WL 3721542, at *1 (citation omitted). A false statement is material if it "concerns a matter which could reasonably cause the insurer to consider either not issuing the policy because of increased risk or issuing the policy with an increased premium." *See Johnson v. Prudential Ins. Co. of Am.*, 589 F. Supp. 30, 34 (D.D.C. 1983) ("The test of materiality, as that term is used in the statute is 'whether the representation would reasonably influence the insurer's decision as to whether it should insure the applicant.'") (citing cases); *see also Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 83, 87 (D.D.C. 2005). "Both falsity and materiality under Section 31-4314 may be found as a matter of law." *See Ross*, 2010 WL 3721542, at *1 (citing *Prudential Ins. Co. of Am. v. Saxe*, 134 F.2d 16, 25 (D.C. Cir. 1943)).

---

[8] Section 31-4314 requires a showing that "the applicant intended to deceive the insurer *or* the false statement materially affected the insurer's decision of whether to insure the applicant." *See Ross*, 420 B.R. at 47 (emphasis added). In other words, the insurer need not demonstrate intent to deceive if the false statement is shown to be material. *See Hill v. Prudential Ins. Co. of Am.*, 315 A.2d 146, 148 (D.C. 1974) (predecessor statute "did not require that [the insurer] prove [insured's] false statement, which was conceded to materially affect the risk assumed, was made with intent to deceive. . . . [P]roof that an application for insurance contains a false statement which materially affects the acceptance of the risk or hazard assumed by the insurer is sufficient to defeat a claim under the policy.").

The Firm's response to Question 6(b) in the Written Application as well its Warranty Statement unquestionably are false in light of the Firm's and Sanford's undisputed knowledge of their admitted negligence in missing the deadline to move for class certification in the Underlying Employment Action.  The materiality of these falsities and the failure of the Firm to disclose to CSIC very real grounds for a potential malpractice **Claim** is apparent in light of the "nature [of] insurance," which "is fundamentally based on contingent risks, which may or may not occur." *See Mayor and City Council of Baltimore v. Utica Mut. Ins. Co.*, 802 A.2d 1070, 1100 n.49 (Md. 2002) (citing cases from multiple jurisdictions and addressing the "known loss and fortuity doctrines"); *see also Pittson Co. Ultramar Am. Ltd. v. Allianz Ins. Co.*, 124 F.3d 508, 516 (3d Cir. 1997) ("the purpose of insurance is to protect against unknown risks"); *Bartholomew v. Appalachian Ins. Co.*, 655 F.2d 27, 29 (1st Cir. 1981) ("[insurer] insures against a risk, not a certainty").  If an applicant for insurance "knows or has reason to know when it [applies for coverage] that there is a substantial probability that it will suffer or has already suffered a loss, the risk ceases to be contingent and becomes a probable or known loss." *See Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1210 (Ill. 1992).  Insurers only "undertake to indemnify against unknown risks of harm." *See Int'l Ins. Co. v. Peabody Int'l Co.*, 747 F. Supp. 477, 484 (N.D. Ill.1990).

At the time of its warranty to CSIC, the Firm's undisclosed error and its probability to give rise to a **Claim** was the proverbial burning building about which had any reasonable insurer known, it would have considered not issuing the policy or requiring different terms. *See Okie Dokie*, 368 F. Supp. 2d at 87 (employing objective reasonable insurer standard to determine materiality of representation); *Johnson*, 589 F. Supp. at 35.  As such, the Firm's false representations in this regard were material as a matter of law. *See Ross*, 2010 WL 3741512, at

*1 (attorney's failure to disclose negligence in failing to timely file an answer was a material misrepresentation); *Home Indem. Co.*, 910 F. Supp. at 1590 (N.D. Ga. 1995) (failure to disclose error in missing statute of limitations was a material misrepresentation).  Thus, even under Section 31-4314, the Firm's and Sanford's demands for coverage must fail, and CSIC is entitled to the entry of judgment in its favor declaring that the Policy does not afford coverage for the Malpractice Action.

## II.   <u>CONCLUSION</u>

This case provides a classic example of circumstances for which insurance coverage is not available.  Before the inception date of the first policy issued by CSIC and continuously renewed, the Firm and Sanford indisputably were aware that they had breached a professional duty *and* had grounds to foresee that their admitted mistake might reasonably be expected to be the basis of a **Claim**.  Put differently, the potential that the **Claim** asserted in the Malpractice Action would be made was a risk known to the **Insureds** before CSIC issued the Policy.  Consequently, the fundamental Prior Knowledge Condition to coverage is not satisfied.  Furthermore, in order to obtain the current Policy, the Firm warranted that it was not aware of "any circumstances . . . as to any incident which may result in claim being made against [the Firm] or any of its [attorneys]."  This warranty was false, and the Policy therefore does not provide coverage.

For each of these independently sufficient reasons, CSIC is entitled to summary judgment declaring that the Policy does not afford any coverage for the Malpractice Action and that CSIC has no obligation to defend or indemnify the **Insureds** with respect to the Malpractice Action.

Dated:  February 18, 2011                    Respectfully submitted,


                                             /s/ *Marc E. Rindner*
                                             Richard A. Simpson
                                             (D.C. Bar No. 411893)
                                             Marc E. Rindner
                                             (D.C. Bar No. 461250)
                                             WILEY REIN, LLP
                                             1776 K Street, NW
                                             Washington, D.C.  20006
                                             Telephone (202) 719-7000
                                             Facsimile (202) 719-7049

                                             *Counsel for Plaintiff Capitol Specialty*
                                             *Insurance Corporation*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CAPITOL SPECIALTY INSURANCE CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 1:10-cv-02079 - ESH |
| v. | ) ) | Assigned to: Huvelle, Ellen S. |
| SANFORD WITTELS & HEISLER, LLP; and | ) ) ) | Assign Date: 12/8/2010 |
| DAVID SANFORD, | ) ) | Description: Contract |
| Defendants. | ) ) ) | |

**PLAINTIFF CAPITOL SPECIALTY INSURANCE CORPORATION'S
STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE DISPUTE**

Pursuant to Local Rules 7(h) and 56.1, Plaintiff Capitol Specialty Insurance Corporation

("CSIC"), in support of its Motion for Summary Judgment, hereby submits this Statement of

Material Facts as to Which There is No Genuine Dispute.

**I.     STATEMENT OF UNDISPUTED MATERIAL FACTS**

**A.     The Underlying Employment Action and the Firm's Admitted Mistake**

1.     In January 2004, Janet Howard and a number of other government employees

(collectively, "Howard" or the "Clients") retained Sanford Wittels & Heisler, LLP (the "Firm")

to serve as "Class Counsel" for a putative class of individuals who allegedly were victims of

racially discriminatory employment practices by the United States Department of Commerce (the

"Department").  [Ex. 1, Underlying Employment Action Complaint.]

2.      On October 5, 2005, the Firm filed a "Class Action Complaint" against the

Department in the suit styled *Howard, et al. v. Gutierrez*, No. 1:05-cv-1968-JDB (D.D.C.) (the

"Underlying Employment Action").  [Ex. 1, Underlying Employment Action Complaint].

3.      The Firm explicitly framed the Underlying Employment Action as a class action

under Rule 23 of the Federal Rules of Civil Procedure.  [Ex. 1, Underlying Employment Action

Complaint at ¶¶ 253 to 271.]

4.      On March 17, 2006, the Department moved to "strike all class claims" asserted in

the Underlying Employment Action on the grounds that Howard "failed to comply with Local

Rule 23.1(b)," which requires that:  "Within 90 days after the filing of a complaint in a case

sought to be maintained as a class action, unless the court in the exercise of its discretion has

extended this period, the plaintiff shall move for a certification . . . that the case may be so

maintained."  [Ex. 2, Motion to Strike at 61.]

5.      On June 23, 2006, the Firm sought to extend the period to move for class

certification.  [Ex. 3, Motion for Enlargement of Time.]

6.      The court rejected the Firm's request and, on February 6, 2007, "grant[ed] the

motion to strike the class allegations because [the Howard] plaintiffs . . . failed to timely move

for class certification."  [Ex. 4, 2/6/07 Memorandum Opinion at 1.]

7.      The court's February 6, 2007 opinion directly addressed the Firm's "error," first

finding that the Firm had been on notice of its failure to comply with the filing deadline no later

than March 17, 2006, but nonetheless "waited . . . another three months . . . before even filing a

motion for an extension of time."  [Ex. 4, 2/6/07 Memorandum Opinion at 24.]

8.      The court stated in its February 6, 2007 opinion:

Although [counsel] stated at the motions hearing that their delay was "a mistake"
– a reason that does not usually constitute excusable neglect . . . – this Court

wonders why a party acting diligently and in good faith would wait three additional months after being alerted to a missed deadline before attempting to mitigate the error.

[Ex. 4, 2/6/07 Memorandum Opinion at 24-25.]

9.      On February 21, 2007, the Firm filed a motion to reinstate the class claims or, alternatively, for certification for an interlocutory appeal.  [Ex. 5, Motion to Reinstate Class Claims.]

10.      In support of the motion, the Firm submitted a declaration from Sanford in which he attested under the headings of "Excusable Neglect" and "Inadvertence" that:

- "In the fall and winter of 2005, [the Firm] was a relatively small civil rights firm: during that time period, there were a total of four attorneys in the Firm's Washington D.C. office . . . ."

- "Shortly before filing the Class Action Complaint on October 5, 2005, the [Firm] associate assigned to the Commerce matter resigned from the Firm.  The new attorney hired to replace that associate was assigned to this matter and, in addition numerous other matters in the Firm."

- "In the fall and winter of 2005, I [Sanford] was engaged in other class matters around the United States . . . ."

- "For these reasons, my Firm inadvertently neglected to file a motion within 90 days of the original Class Complaint for class certification or a motion for an extension of time."

[Ex. 5, Motion to Reinstate Class Claims at Exhibit One ¶ 19-22.]

11.      The court denied this motion on September 7, 2007, specifically finding that "the fact remains that [the Howard] plaintiffs have no excuse beyond attorney mistake for their failure to file a timely motion for class certification."  [Ex. 6, 9/7/07 Order at 5.]

**B.      The Firm's Application for Insurance Coverage**

12.      The Firm submitted to CSIC a written application for coverage signed by named partner Jeremy Heisler ("Heisler") and dated November 1, 2007 ("Written Application").  [Ex. 7B, Written Application at 7.]

13.     While the Firm had been insured by CSIC in 2004, that coverage was not renewed

in 2005 or 2006, during which period the Firm was insured by another unrelated carrier.  [Ex. 7,

Thompson Declaration at ¶ 3.]

14.     Question 6(b) on the Written Application asked:

After enquiry, are any persons listed in Supplement 1 aware of any circumstances,
allegations, tolling agreements or contentions as to any incident which may result
in a claim being made against the Applicant or any of its past or present Owners,
Partners, Shareholders, Corporate Officers, Associates, Employed Lawyers,
Contract Lawyers or Employees or its predecessors in business?

[Ex. 7B, Written Application at 6.]

15.     The Firm answered "no" to question 6(b) of the Written Application.  [Ex. 7B,

Written Application at 6.]

16.     The Firm also submitted with the Written Application two "Claims Update

Forms," which provided certain information regarding two matters against the Firm and its

attorneys that had been reported to the Firm's previous insurance carrier.  [Ex. 7B, Written

Application at 14-16.]

17.     Neither of the matters described in the Claims Update Forms related to the

Underlying Employment Action or the Firm's failure to file a timely motion for class

certification.  [Ex. 7B, Written Application at 14-16.]

18.     Above the signature line, the Written Application provided:

The Applicant declares and warrants that, after enquiry, to the best knowledge of
all persons to be insured the statements set forth herein and in any attachments
made hereto are true and no material facts have been suppressed, omitted or
misstated.  [CSIC] reserve[s] the right to deny or rescind coverage on any Policy
that is issued as a result of this [a]pplication if, in the statements set forth herein
and in any attachment made hereto is found that material information has been
omitted, suppressed or misstated . . . .

[Ex. 7B, Written Application at 7.]

19.     The Firm also submitted in support of its application a "Warranty Statement"

executed by Heisler on December 6, 2007, which stated:

> …after diligent inquiry of all attorneys proposed for this insurance, [the Firm]
> warrants that as of December 6, 2007, all claims or suits, as well as facts,
> incidents, circumstances, acts, errors or omissions that could give rise to a claim
> have been reported to our previous insurance carriers.
>
> It is also warranted that after diligent inquiry of all attorneys proposed for this
> insurance, that as of December 6, 2007 the [Firm] is not aware of any claims or
> suits, or any facts, incidents, circumstances, acts, errors or omissions that could
> give rise to a claim against any attorney of the firm, the firm or its predecessors.

[Ex. 7C, Warranty Statement.]

20.     The Warranty Statement further provided that:

> Sanford Wittels & Heisler, LLP acknowledges that no coverage will be available
> under insurance placed by [CSIC] for any claim, suit, incident, or other
> circumstance which should have been disclosed.

[Ex. 7C, Warranty Statement.]

## C.     The Policy Issued by CSIC to the Firm

21.     Based on the information provided by the Firm, including the Written Application

and the Warranty Statement, CSIC issued Policy No. 0303-7637 to the Firm for the **Policy**

**Period** of December 10, 2007 to December 10, 2008.[1]  [Ex. 7A, Policy.]

22.     As set forth in the "Insuring Agreement," the Policy provides specified coverage

for:

> all amounts in excess of the retention shown in the Declarations that an **Insured**
> becomes legally obligated to pay as **Damages** and **Claim Expenses** because of a
> **Claim** that is made and reported to the **Company** during the **Policy Period** or any
> extended reporting period.

[Ex. 7A, Policy, Section I.A.]

23.     The Insuring Agreement, as amended by Endorsement 2, further specifies that:

---

[1] Terms in bold are defined in the Policy.

[i]t is a condition precedent to coverage under this policy that the act or omission occurred:

1.      during the **Policy Period**; or

2.      on or after December 10, 2004, provided that all of the following three conditions are met . . . (b) prior to the inception of the first policy issued by [CSIC] if continuously renewed, no **Insured** had any basis (1) to believe that any **Insured** had breached a professional duty; or (2) to foresee that any such act or omission or **Related Act or Omission** might reasonably be expected to be the basis of a **Claim** against any **Insured** . . .

[Ex. 7A, Policy, Section I.A.]

24.      The Policy defines "**Insured**" in relevant part to mean the **Named Insured** – *i.e.*, the Firm – and "any lawyer or professional corporation listed in the application on the day the **Policy Period** incepts."  [Ex. 7A, Policy, Declarations Item 1 and Section VI.G and J.]

25.      Sanford and Heisler, among others, are listed as attorneys of the Firm in Supplement 1 to the Written Application.  [Ex. 7B, Written Application at 8.]

26.      The Policy also provides that:

**Application** means the application submitted to the **Company** [*i.e.*, CSIC] or any of its agents for this Policy, all prior applications submitted to the **Company** or any of its agents for prior policies issued by [CSIC] to the **Named Insured** and any and all materials and information submitted to or obtained by the **Company** in connection with such applications, including all statements made by the **Insured** or their agents or brokers, all of which are deemed to be on file with the **Company** and are deemed to be attached to, and form part of this Policy, as if physically attached.

[Ex. 7A, Policy, Section VI.A. and Endorsement No. 3.]

27.      Under the Policy, if any **Insured** provides **Notice** during the **Policy Period** of "any act or omission or circumstance that may reasonably be expected to be the basis of a **Claim**, . . . [a]ny such **Claim** that is subsequently made against the **Insured** and promptly reported to [CSIC] shall be deemed to have been made and reported at the time such **Notice** was given."

[Ex. 7A, Policy, Section V.B.3.]

D.      **The Malpractice Action Against the Firm and Its Tender to CSIC**

28.      On April 4, 2008, the Firm provided **Notice** to CSIC of a potential **Claim** in connection with its error in the Underlying Employment Action. [Ex. 7D, 4/4/08 Fax.]

29.      By letter dated May 7, 2008, CSIC informed the Firm that it would accept the Firm's April 4, 2008 letter as **Notice** of circumstances that could give rise to a **Claim** under the Policy.  In that letter, CSIC reserved all of its rights under the Policy, including specifically the right to deny coverage based on the failure to satisfy the Prior Knowledge condition set forth in Policy Section I.A.2.  [Ex. 7E, 5/7/08 Letter.]

30.      On January 21, 2010, that potential **Claim** developed into an actual **Claim** when a number of the Clients initiated the action captioned *Howard, et al. v. Sanford Wittels & Heisler, LLP, et al.*, No. 2010-ca-00311-M (Super. Ct., D.C.) (the "Malpractice Action"), which names as defendants the Firm and Sanford, as well as one other attorney who is not a member of the Firm. [Ex. 8, Malpractice Action Complaint; Ex. 7F, 2/19/10 Fax.]

31.      Based on the Firm's admitted mistake in failing to timely move for class certification in the Underlying Employment Action and the resulting permanent loss of their class claims, the Clients assert causes of action against the Firm and Sanford for "professional negligence" and "breach of contract."  [Ex. 8, Malpractice Action Complaint at ¶ 40-49.]

32.      CSIC advised the Firm that it would provide a defense for the Malpractice Action subject to a full and complete reservation of rights, including specifically the right to deny coverage based on the failure to satisfy the Prior Knowledge condition set forth in Policy Section I.A.2.  Later, CSIC advised the Firm that coverage is not available under the Policy, but that CSIC would continue to provide a defense subject to its full and complete reservation of rights and pending the resolution of this action by CSIC seeking, among other relief, a declaration of no

coverage.  [Ex. 9, 11/8/10 Letter; Ex. 7E, 5/7/08 Letter; Ex. 7G, 3/23/10 Letter; Ex. 7H, 5/11/10

Letter.]


Dated:  February 18, 2011                         Respectfully submitted,


                                                  /s/ *Marc E. Rindner*_____
                                                  Richard A. Simpson
                                                  (D.C. Bar No. 411893)
                                                  Marc E. Rindner
                                                  (D.C. Bar No. 461250)
                                                  WILEY REIN, LLP
                                                  1776 K Street, NW
                                                  Washington, D.C.  20006
                                                  Telephone (202) 719-7000
                                                  Facsimile (202) 719-7049

                                                  *Counsel for Plaintiff Capitol Specialty*
                                                  *Insurance Corporation*