## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CAPITOL SPECIALTY** | ) | |
| **INSURANCE CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:10-cv-2079-ESH** |
| | ) | |
| | ) | **ORAL ARGUMENT** |
| **SANFORD WITTELS & HEISLER, LLP** | ) | **REQUESTED** |
| **AND DAVID W. SANFORD,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Stefanie Roemer, D.C. Bar No. 464450
Kristen Walsh, D.C. Bar No. 495767
**SANFORD WITTELS & HEISLER, LLP**
1666 Connecticut Avenue, N.W., Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7777
Facsimile: (202) 742-7776

Dated: March 25, 2011

Defendants Sanford Wittels & Heisler, LLP and David W. Sanford (collectively "SWH," the "Law Firm" or the "Defendants"), hereby submit this memorandum of points and authorities in opposition to the Motion for Summary Judgment (the "Motion") filed by Plaintiff Capitol Specialty Insurance Corporation's ("CSIC," the "Insurer" or the "Plaintiff") (Dkt. No. 5). For the reasons set forth herein, the Motion should be denied.

## PRELIMINARY STATEMENT

This case is about an insurer's bad faith breach of its duty to defend its insured against claims that the insurer repeatedly acknowledged were covered under its policy. For more than two-and-a half years, insurer CSIC agreed that the malpractice claims for which SWH sought coverage were covered under the insuring clause of the policy issued by CSIC to SWH (as defined herein, the "Policy"). On March 23, 2010, CSIC expressly acknowledged that "***coverage is available*** to Sanford Wittels & Heisler LLP for this matter." Ptf. Ex. 7G (emphasis added).

For more than two-and-a-half years, SWH relied on CSIC's acknowledgement of coverage for these claims. When the claims evolved into an actual lawsuit, CSIC affirmed and re-affirmed its right and duty to defend SWH against the allegations in the complaint, and SWH fully cooperated with CSIC in its defense of the claims. Two-and-a-half years after SWH first notified the Insurer of a potential claim and ten months into the litigation, CSIC suddenly and inexplicably withdrew from this defense, leaving SWH reeling.

Throughout the two and-a-half years in which CSIC was extending coverage, CSIC never suggested that SWH could reasonably have foreseen that the striking of the class claims in one of its discrimination cases would result in a claim. Thus, at a minimum, material facts are in dispute regarding whether SWH made any misrepresentations in the Written

1

Application or Warranty Statement (as defined in the Motion).  CSIC's citation to the record in the underlying discrimination case is not sufficient to demonstrate that SWH reasonably expected its clients would sue them, particularly because the clients were permitted to pursue their individual discrimination claims, and the order striking the class allegations remained appealable later in the case.

Having relied on CSIC's repeated acknowledgements of coverage and expended nearly the full amount of its $100,000 deductible, SWH is now left bare by CSIC under a Policy that provides $7 million in coverage for the claims CSIC previously acknowledged were covered.  To make matters worse, SWH has received a settlement demand in the underlying action within the limits of the CSIC Policy.  CSIC has refused to enter into negotiations with respect to this demand, and has thereby breached its obligation to pursue in good faith a settlement of the underlying claims within policy limits.

In short, there are multiple facts in dispute regarding CSIC's bad faith breach of its obligations under an insurance policy issued to SWH, precluding summary judgment at this early stage in the proceedings before discovery has even started.  It is noteworthy that CSIC moves for summary judgment on the basis of a record that deliberately omits material facts rendering CSIC liable for both coverage and damages arising out of its material breach of the Policy.  The Motion is resoundingly silent regarding CSIC's repeated acknowledgements of coverage to SWH over the course of two and half years – a silence that speaks volumes.  When the full story is told, it is clear that the Motion is nothing more than a premature effort by CSIC to have this case resolved before SWH has an opportunity to be heard – an effort that is consistent with the bad faith conduct exhibited by CSIC toward its insured throughout its handling of the claims at issue.

First, under the terms of the Policy and well-settled law, CSIC owes SWH a duty to defend and an obligation to engage in good faith settlement negotiations when a demand to settle the underlying claims is within policy limits. *See Barney Greengrass, Inc. v. Lumbermans Mutual Cas. Co.*, 2010 WL 3069560 (S.D.N.Y. July 27, 2010); *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 295 F.3d 232, 240-41 (2d Cir. 2002). The duty to defend is a broad one, and "an insurer seeking to avoid its duty to defend bears a heavy burden." *Barney Greengrass*, Slip Op. at *4. CSIC's self-serving assertion that SWH did not satisfy a condition precedent to coverage under the Policy is disputed and cannot serve as the basis for CSIC to deny SWH a defense. There is no evidence in the record to demonstrate that prior to CSIC's issuance of the Policy, SWH could foresee the malpractice claims for which it now seeks coverage. SWH received an adverse ruling striking class claims based on a disputed interpretation of the local rules, immediately sought an interlocutory appeal and lost. SWH knew that it could appeal the propriety of the court's striking of the class claims once a final judgment was rendered on its client's individual claims. On the record before this Court, CSIC cannot establish that SWH failed to disclose an act or omission that might reasonably have been expected to form the basis for a claim under the Policy. On the contrary, the facts submitted by SWH in opposition to the Motion support a finding that CSIC has breached both its duty to defend and its obligation to enter into good faith negotiations in response to a settlement demand within policy limits.

Second, viewing the facts in a light most favorable to SWH, it is clear that CSIC is estopped from denying coverage because, with knowledge of its coverage defenses as early as April 2008, but no later than February 2010, CSIC unreasonably delayed disclaiming coverage on the basis of those defenses until November 2010, causing prejudice to SWH. Indeed, it is

indisputable that by February 2010, at the latest – and as early as April 2008 – CSIC possessed all of the information upon which it based its November 2010 disclaimer and now bases its request for summary judgment.   Nonetheless, CSIC inexplicably and unreasonably delayed its declination of coverage for two-and-a-half years and SWH relied on CSIC's repeated acknowledgements of coverage to its detriment.   An insurer is estopped from denying coverage where the insured "relied to its detriment on that coverage and was prejudiced by the delay of the insurance company in denying or disclaiming coverage based on the loss of the right to control its own defense."   *Liberty Ins. Underwriters, Inc. v. Arch Ins. Co.*, 61 A.D.3d 482, 482 (N.Y. App. Div. 1st Dep't 2009).

Third, CSIC waived its right to rely on two of the grounds cited as its purported bases for denying coverage.   When an insurer "actually asserts certain policy defenses, whether by disclaimer or reservation of rights, the insurer is deemed to have waived any other unasserted grounds for refusing coverage."   *Olin Corp. v. Insurance Company of North America*, No. 84 Civ. 1968 (TPG), 2006 WL 509779, at *4 (S.D.N.Y. Mar. 2, 2006).   During the two-and-a-half-year period prior to disclaiming coverage, CSIC specifically reserved its rights only with respect to Section I.A.(2) of the Policy.   In the Motion, however, CSIC cites two further bases for its coverage declination: (i) a Warranty Statement; and (iii) the Written Application.   The facts disclosed in SWH's Declaration in opposition to the Motion – and which CSIC disingenuously omits – demonstrate that CSIC waived its right to deny coverage on these bases.   The first time CSIC ever raised the Warranty Statement or Written Application was when CSIC denied coverage in November 2010.   As a matter of law, therefore, CSIC waived these defenses.

Finally, Section I.A.(2)(b) of the Policy, the third basis for CSIC's coverage denial, is hopelessly ambiguous and must be construed in SWH's favor.   *See Parks Real Estate*

*Purchasing Group v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (ambiguities in insurance policy are construed against the insurer).  Indeed, CSIC admits to facts that belie CSIC's self-serving characterization of this provision as clear and unambiguous. Section I.A.(2)(b) cannot form the basis for any disclaimer, much less a disclaimer that was delayed by over two-and-a-half years.  Construed against CSIC, this provision is ineffective as a basis for CSIC's coverage denial.

In sum, when all the facts at issue in this case are considered, it is clear that CSIC's claims cannot be resolved at this early stage in proceedings.  On the contrary, as SWH's submissions in opposition to the Motion demonstrate, the facts support a finding by this Court that SWH is entitled to defense and indemnity coverage under the Policy and damages for CSIC's breach of the Policy.  Summary judgment should be denied.[1]

## COUNTER-STATEMENT OF FACTS

### SWH's Law Practice

SWH is one of the leading civil rights class action firms in the nation, recognized by Employment Law360 as "Employment Group of the Year" in 2010 based on its extraordinary victory in a sex bias employment class action and a significant ruling favoring drug representatives in a wage-and-hour case.  *See* Joseph Marks, *Employment Group of the Year:*

---

[1]      Currently pending before this Court is a motion by SWH to transfer this action (the "Transfer Motion") (Dkt. No. 4) to the United States District Court for the Southern District of New York, where SWH has filed an action currently pending before the Honorable Judge Lewis Kaplan under Case No. 1:11-cv-00797-LAK (the "SDNY Action"). *See* Ex. A.  CSIC filed this Motion before this Court decided the Transfer Motion.  To the extent the action proceeds before this Court, SWH will be asserting counterclaims consistent with the facts set forth herein and in its Declaration.

*Sanford Wittels*, Law360, January 10, 2011.  Mr. Sanford is a Founding Partner of SWH and the

Managing Partner of SWH's Washington, D.C. office.  *See* Ex. B.[2]

**The Policy**

CSIC issued policy number 0303-7637 (the "Policy") to SWH for the period

December 10, 2007 through December 7, 2008.  The Insuring Agreement in the Policy provides:

> [CSIC] will pay on behalf of an Insured [including Mr. Sanford
> and SWH], subject to the limit of liability, all amounts in excess of
> the retention shown in the Declarations that an Insured becomes
> legally obligated to pay as Damages and Claim Expenses because
> of a Claim that is made and reported to [CSIC] during the Policy
> Period. . . .

*See* Ptf. Ex. 7A at Section IA at 1.[3]  The term "Claim" is defined in the Policy as "a demand for

money or Legal Services arising out of any actual or alleged acts, errors or omissions in

connections with the performance of, or actual or alleged failure to perform, Legal Services."

*See id*. at  9.  The term "Damages" is defined as "the monetary portion of any judgment, award

or settlement."  *See id.*  The term "Claim Expenses" is defined as "reasonable fees, costs and

expenses charged by attorneys retained or approved by [CSIC] for a Claim brought against an

Insured."  *See id.*  Under the Policy, SWH has a self-insured retention of $100,000.00 per Claim.

*See id*. at Declarations Page.

The Policy was the second policy issued to SWH by CSIC, a significant fact with

respect to CSIC's belated attempt to deny coverage.  *See* Plaintiff's Memorandum at 5.  CSIC

---

[2]     Citations to "Ex.__" refer to exhibits to the Declaration of David W. Sanford in Support
of Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's
Motion for Summary Judgment ("Sanford Decl."), submitted herewith.

[3]     Citations to "Ptf. Ex. __" refer to exhibits to the Memorandum of Points And Authorities
in Support of Capitol Specialty Insurance Corporation's Motion for Summary Judgment
("Plaintiff's Memorandum") (Dkt. No. 5).

previously issued a policy to SWH for the policy period December 10, 2004 to December 10, 2005 (the "2004 Policy").  *Id.*; *see* Ptf. Ex. 9 at 5.   The 2004 Policy was the first policy that CSIC issued to SWH, and the 2004 Policy was not renewed.

**The Malpractice Case Against SWH**

In 2004, SWH, along with the Law Firm of Grant E. Morris ("Grant Morris"), agreed to represent three individuals (the "Clients") who sought to pursue claims of race discrimination against the United States Department of Commerce (the "DOC").   Sanford Decl. ¶ 3.  SWH filed a civil action in federal district court on behalf of the Clients, individually and as representatives of a putative class of similarly-situated African American employees, captioned *Howard v. Gutierrez*, No. 1:05-cv-01968.   *See* Ptf. Ex. 1.  Less than ninety days after filing an amended complaint in that action, the Clients moved for an extension of time to move for class certification.   *See* Ptf. Ex. 3.   In March 2006, the Department of Commerce (the "DOC") filed a motion to strike the class claims, arguing that the Clients had missed a filing deadline under the local rules of the D.C. District Court.   *See* Ptf. Ex. 2.   The DOC renewed its motion to dismiss the class claims in July 2006 following the filing of the Amended Complaint.  Ex. C.

SWH duly opposed the DOC's motions, disputing the DOC's interpretation of the local rules.   *See* Exs. D, E.   Specifically, SWH argued that the DOC was interpreting Local Rule 23.1(b) incorrectly by reading it to require a motion for class certification to be filed within 90 days of the original complaint, irrespective of whether an amended complaint is filed – an interpretation that conflicted with controlling authority.   Ex. D at 16; Ex. E at 30-33.   On February 6, 2007, the Court issued an order granting the DOC's motion and striking the class claims based on the DOC's interpretation of Local Rule 23.1 (the "February 2007 Order").   *See* Ptf. Ex. 4.

SWH promptly moved for reconsideration of the February 2007 Order, seeking to reinstate the class claims. *See* Ptf. Ex. 5. However, the District Court reaffirmed its prior holding in an order dated September 7, 2007 (the "September 2007 Ruling"). *See* Ptf. Ex. 6. On February 21, 2007, SWH filed a Petition for Permission to Appeal Pursuant to Rule 23(f) (the "Appeal Petition"). On April 30, 2007, the United States Court of Appeals for the District of Columbia issued a ruling denying the Appeal Petition. *See* Ex. F.

The February 2007 Order striking the class claims did not affect the Clients' individual claims, which the District Court permitted to proceed. *See* Ptf. Ex. 4. Accordingly, upon learning of the denial of SWH's Appeal Petition, the Clients advised Mr. Sanford that they would continue to pursue their individual claims and appeal the denial of the class claims after their individual claims were resolved. Sanford Decl. ¶ 8. The Clients did not indicate any intent to file a lawsuit against SWH or Mr. Sanford at that time. *Id.* On the contrary, in discussions with SWH, the Clients (1) expressed their understanding that the Court's dismissal of the class claims on the basis of Local Rule 23.1(b) could be appealed at a later time and (2) stated their intent to proceed with their individual claims and appeal the Court's decision striking the class claims at the end of the litigation. *Id.* Indeed, the Clients have proceeded with their individual claims while preserving further appeal of the striking of their class claims.[4] That case, styled *Howard v. Gutierrez*, No. 1:05-cv-01968,[5] is still pending in the District Court. Sanford Decl. ¶ 10. In fact, one of the class representatives, Ms. Ward Jordan, recently settled her claims for $67,500. *See* Ex. G.

---

[4] The Clients have engaged new counsel to represent them in the DOC Case.

[5] The Clients identified the wrong case number in their Complaint and Amended Complaint in that action. *See e.g.,* Ptf. Ex. 1.

On September 20, 2007, the Clients terminated their engagement of SWH and Grant Morris.   Sanford Decl. ¶ 8.   Based on the Clients' prior course of conduct and the discussions preceding their termination of SWH's engagement, SWH did not believe that the Clients were going to bring a malpractice claim against either Sanford or SWH.

Several months went by, and neither SWH nor Grant Morris heard anything further from the Clients.   *Id*. ¶ 9.   In November and December 2007, SWH submitted respectively, the Written Application and the Warranty Statement.   *See* Ptf. Exs. 7B, 7C, *Id*. at ¶ 8.   At that time, SWH had no reasonable expectation that the Clients would bring a lawsuit against them based on the striking of their class claims – a ruling that remained appealable once the Client's individual claims were resolved.

On March 20, 2008, SWH received a letter from attorney Fred Goldberg (the "Goldberg Letter"), stating that he represented the Clients and that he intended to file a lawsuit against Sanford and SWH for malpractice in the DOC litigation.   *See* Ptf. Ex. 7D.   The Goldberg Letter specifically referred to the DOC litigation by its caption, *Janet Howard, et al. v. Gutierrez*, No. 1:04-cv-00756.   *Id*.[6]

Nearly two years passed.   In January 2010, the Clients filed a civil action against SWH and Mr. Sanford in the District of Columbia Superior Court (*Janet Howard, et. al. v SWH, et al*., No. CA 2010-00031-M) (the "Howard Action").   *See* Ptf. Ex. 8.   The Client's complaint in the Howard Action (the "Howard Action Complaint") reiterated the claims first set forth in the Goldberg Letter (the "Malpractice Claims").   Specifically, the Howard Action Complaint alleged that SWH committed professional malpractice by failing to timely move for class certification in

---

[6]     The case number cited in the Goldberg Letter refers to the related case in which the Client's individual claims were asserted.

the DOC action, resulting in the September 2007 Ruling that affirmed the dismissal of the class claims.[7]  *See id.*

### The Plaintiff-Insurer's Repeated Acknowledgements Of Coverage

Starting in April 2008 and continuing for more than two and a half years, CSIC repeatedly acknowledged that the Policy would provide coverage for the Malpractice Claims. *See* Sanford Decl. ¶ 14.  On April 4, 2008, Mr. Sanford and SWH provided CSIC with a copy of the Goldberg Letter.  Ptf. Ex. 7D.  On April 10, 2008, CSIC acknowledged receipt of the Goldberg Letter and stated that it anticipated issuing a position with respect to coverage "in the near future."  Ex. H.

By letter dated May 7, 2008 (the "May 2008 Letter"), CSIC wrote to SWH, stating that it accepted the Goldberg Letter as "notice of circumstances which may give rise to a Claim."  Ptf. Ex. 7E at 1.  CSIC acknowledged that if any subsequent claim were to arise, CSIC "will treat the Claim as having been made and reported" in April 2008.  *Id.* at 2.  In addition, CSIC clearly articulated its understanding of the Malpractice Claims set forth in the Goldberg Letter:

> You have notified us of a situation involving Janet Howard, Joyce Megginson and Tanya Ward Jordan ***wherein they have asserted that you failed to meet the Local Rule requirement with regard to class certification*** which resulted in the class certification being denied.

*Id.* at 1 (emphasis added).

---

[7]     SWH and David Sanford filed a motion to dismiss the class claims set forth in the Howard Action Complaint.  Judge Zeldon granted Defendants' motion and struck the class claims.  At the same time, Judge Zeldon "encouraged" the Clients to file an amended complaint setting forth sufficient facts to support their class claims.  The Clients have since filed an amended complaint and SWH, along with Grant Morris, has filed another motion seeking to strike the class claims.

In the May 2008 Letter, CSIC recited certain provisions in the Policy and set forth a general reservation of CSIC's right to deny coverage. *Id*. at 1-2. CSIC made no reference to the Written Application or the Warranty Statement, which SWH had signed just five months earlier. *See id*. Thus, CSIC implicitly acknowledged that SWH's representations in the Written Application and Warranty Statement were accurate: at the time SWH procured the Policy, SWH could not foresee that any act or omission might reasonably be expected to give rise to a claim. *See* Ptf. Exs 7B, 7C.

The Clients waited almost two years before actually filing a lawsuit against SWH, further reinforcing SWH's reasonable belief that losing its motion to reinstate the class claims was not reasonably likely to give rise to a claim. In January 2010, the Clients commenced the Howard Action. *See* Ptf. Ex. 8. Shortly thereafter, on February 19, 2010, Mr. Sanford and SWH provided a second notice to CSIC by forwarding a copy of the Howard Action Complaint. *See* Ptf. Ex. 7F.

By letter dated March 23, 2010, CSIC expressly: (i) acknowledged receipt of the Howard Action Complaint, (ii) referenced CSIC's May 2008 Letter, and (iii) stated that "***coverage is available*** to Sanford Wittels & Heisler LLP for this matter." Ptf. Ex. 7G (emphasis added).

The Howard Action Complaint, which CSIC received in February 2010, specifically cited the September 2007 Ruling as forming the basis for the Malpractice Claims. Ptf. Ex. 8 ¶ 18. Accordingly, when CSIC agreed that "coverage is available" to SWH for the Howard Action, CSIC knew that the alleged malpractice took place prior to CSIC's issuance of the Policy. *See* Ptf. Ex. 7G. Nonetheless, CSIC made no mention of either the Written Application or the Warranty Statement. *See id*. Rather, CSIC cited certain provisions in the

11

Policy and generally reserved its rights.   *Id.*   By failing to raise the issue of any alleged misrepresentation in the Written Application or Warranty Statement, CSIC confirmed that the striking of the class claims due to SWH's failure to comply with a local rule was not sufficient to put SWH on notice of a possible claim prior to issuance of the Policy.

**SWH's Retention Of Akin Gump**

Thereafter, SWH retained Michelle Roberts, who was at that time associated with Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), to defend the Howard Action.   Sanford Decl. ¶ 15.  Michelle Roberts is a highly experienced and widely known trial attorney.  *See* Ex. I. *Washingtonian Magazine* has ranked Ms. Roberts first on its list of Washington, D.C.'s top 75 lawyers, calling her "the finest pure trial lawyer in Washington – magic with juries, loved by judges, feared by opposing counsel."  Ex. J.  The *Legal Times* named Ms. Roberts as one of Washington, D.C.'s 10 Leading Criminal Defense Lawyers.   Ex. K.  She is also listed in The Best Lawyers in America and Chambers USA: America's Leading Lawyers for Business.  *See* Ex. I.  SWH provided Akin Gump an initial $10,000 retainer fee, and later an additional $6,714.00.  Sanford Decl. ¶ 15.

By letter to SWH dated May 11, 2010, CSIC rejected SWH's counsel of choice. *See* Ptf. Ex. 7H.   CSIC firmly reiterated its "right and duty to defend any Claim seeking Damages **that are covered by this policy**."  *Id.* (emphasis added).   CSIC informed SWH that it had retained Aaron Handleman from Eccleston and Wolf, P.C. ("Eccleston and Wolf") to defend SWH.   *Id.*   After receiving CSIC's letter, SWH advised Michelle Roberts that they would no longer be using her firm to defend the Howard Action because CSIC had rejected her as their choice of counsel.  Sanford Decl. ¶ 19.  SWH has only recouped $2,134.76 of the $16,714 it paid to Akin Gump in connection with the Howard Action.  Sanford Decl. ¶ 19.

**Plaintiff's Untimely, Wrongful Denial Of Coverage**

By letter dated November 8, 2010 (the "Declination Letter"), two and a half years after SWH provided notice of the Goldberg Letter and nearly a year after SWH provided notice of the Howard Action, CSIC made an abrupt about-face in its coverage position.  Through its counsel, CSIC advised SWH that it "has tentatively concluded that ***no coverage*** is available for the Claim" because SWH purportedly failed to comply with certain conditions precedent to coverage.  Ptf. Ex. 9 at 2.  The principal grounds upon which CSIC relied were: (i) a misquoted version of Section I.A.2(b) of the Policy; (ii) the Warranty Statement; and (iii) the Written Application.  *Id*. at 4-6.  After acknowledging, for two and-a-half years, that the striking of the Clients' class claims was not sufficient to give SWH a reasonable basis to anticipate a claim, CSIC suddenly decided to change its position regarding what SWH should have disclosed prior to obtaining the Policy.  Tellingly, CSIC waited until SWH had approached exhaustion of its retention and CSIC would have to start paying for the defense before it provided SWH and Mr. Sanford ***any*** indication that it was denying coverage of the Howard Action.

The Declination Letter was the first time CSIC ever gave SWH or Mr. Sanford any indication that it intended to deny coverage and the first time CSIC ever mentioned either the Warranty Statement or the Written Application.  Inexplicably, CSIC waited to notify SWH of its coverage declination based on facts available to CSIC as early as April 2008, when it received the Goldberg Letter, and no later than February 2010, when it received the Howard Action Complaint.  By the time CSIC got around to denying coverage in November 2010, SWH had already fired its law firm of choice and incurred approximately $87,000 in fees plus costs for CSIC's chosen law firm to defend the Howard Action.  Sanford Decl. ¶¶ 19-20.

13

On December 8, 2010, before providing SWH with a reasonable opportunity to respond to the Declination Letter, CSIC commenced this action. *See* Capitol Specialty Insurance Corporation's Complaint For Declaratory Judgment and Money Judgment (the "Complaint") (Dkt. No. 1).

**CSIC's Bad Faith Refusal To Negotiate A Settlement Within Policy Limits**

On March 7, 2011, SWH informed CSIC of a settlement demand within policy limits in the Howard Action.   Ex. L.   Specifically, SWH advised CSIC that by letter dated March 2, 2011 from Fred B. Goldberg, P.C., the Clients had set forth a settlement proposal under which CSIC would pay no more than the $7,000,000 limits of the Policy to settle the Howard Action (the "Settlement Proposal").   *Id.*   CSIC rejected the Settlement Proposal and refused to negotiate any alternative settlement based on its unilateral, bad faith determination that no coverage is owed under the Policy.  Ex. M.

## ARGUMENT

Summary judgment is appropriate only where the pleadings, supporting papers, and affidavits demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Summary judgment should be denied when material facts are in dispute.  *See Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994) ("If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available.").

As a threshold matter, "A party opposing summary judgment needs a 'reasonable opportunity' to complete discovery before responding to a summary judgment motion."  *York v.*

*McHugh*, 698 F. Supp. 2d 101, 108-09 (D.D.C. 2010) (granting non-movant's motion under former Federal Rule of Civil Procedure 56(f) and denying summary judgment without prejudice pending completion of discovery); *see Gordon v. Office of the Architect of the Capitol*, 2010 WL 4568832, at *9 (D.D.C. Nov. 12, 2010) (consideration of motion for summary judgment was premature where discovery had not yet been conducted).[8]   Here, SWH has not yet had an opportunity to conduct any discovery in connection with this matter.   Accordingly, it would be premature for the Court to rule on the Motion at this early stage of the proceedings.

Moreover, there are numerous material facts in dispute including, inter alia, (1) whether CSIC can now deny coverage when it specifically stated that coverage is available; (2) whether SWH had a reasonable basis to believe the Clients would file a lawsuit against it; (3) whether SWH's representations in the Warranty Statement and the Written Application contained any factual inaccuracies; (4) whether SWH was harmed by relying on CSIC's repeated acknowledgements of coverage over the course of two and a half years; and (5) whether CSIC failed to reserve its rights or disclaim coverage based on the Warranty Statement and the Written Application.

The CSIC Motion recites **no** facts relating to CSIC's repeated acknowledgements of coverage followed by its delayed denial of coverage on grounds that were available to CSIC from the first time it received notice of the Malpractice Claims in April 2008.   Nor does the Motion describe CSIC's refusal to negotiate a settlement demand by the Clients within the limits of the Policy.   These facts, which are in SWH and David Sanford's Counter-Statement of Facts,

---

[8]   Pursuant to changes to the Federal Rules of Civil Procedure which became effective on December 1, 2010, Rule 56(f) was renumbered as 56(d) and certain modifications to the wording were made.   However, the Committee Notes to Rule 56 explicitly state that, "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)."   Committee Notes to Fed. R. Civ. P. 56(d).

support a finding that CSIC's conduct toward SWH is fraught with bad faith, constituting a

material breach of the Policy and entitling SWH to coverage under the Policy for the Howard

Action and consequential damages arising from CSIC's breach.

　　　　In addition, CSIC's coverage denial is barred by estoppel and waiver, and its

coverage defense based on an ambiguous provision in the Policy is ineffective.[9]

**I.　THE UNDISPUTED FACTS DEMONSTRATE THAT CSIC BREACHED ITS DUTY TO DEFEND AND TO NEGOTIATE A SETTLEMENT WITHIN POLICY LIMITS.**

　　　　An insurer's duty to defend is broader than the duty to indemnify and "is triggered

whenever the allegations in the complaint fall within the risk covered by the policy." *Barney*

*Greengrass, Inc. v. Lumbermans Mutual Cas. Co.*, No. 09 Civ. 7697 (NRB), 2010 WL 3069560,

slip op. at *4 (S.D.N.Y. July 27, 2010).  An insurer that seeks to avoid its duty to defend "bears a

heavy burden . . . [which] in practice, is seldom met."  *Id.*; *accord Belt Painting Corp. v. TIG Ins.*

*Co.,* 100 N.Y.2d 377, 383, 763 N.Y.S.2d 790, 795 N.E. 2d 15 (2003) ("As we have repeatedly

held, an insurer has a duty to defend if the allegations . . . give[ ] rise to the reasonable possibility

of recovery under the policy.").[10]

---

[9]　　　The Motion is silent regarding choice of law.  Under the choice of law analysis undertaken by courts in this jurisdiction, New York law applies to the coverage issues that are the subject of the Motion, because the Policy was issued to SWH at its New York address and was negotiated in New York.  *See Liberty Mut. Ins. Co. v. Travelers Indemnity Co.*,78 F.3d 639, 642 (D.C. Cir. 1996) (under choice of law rules in the District of Columbia, "insurance contracts are governed by the substantive law of the state in which the policy is delivered"); *Cambridge Holdings Group, Inc. v. Federal Ins. Co.*, 357 F. Supp. 2d 89, 93 (D.D.C. 2004) (same).  The Motion apparently presumes, incorrectly, that the law of the District of Columbia controls the coverage issues in this case.  To the extent CSIC disputes the application of New York law, such dispute raises issues of fact that further weigh against any grant of summary judgment to CSIC.  Notably, however, the law of New York and D.C. is the same with respect to the duty to defend and settle claims, and the standards that apply to the doctrines of waiver and estoppel in the insurance coverage context.  *See infra.*

[10]　　*See also Council for Responsible Nutrition v. Hartford Cas. Ins. Co.,* 2007 WL 2020093 (D. D. C. July 12, 2007) ("The duty to defend is broad, requiring the defense of all claims

Moreover, pursuant to well-settled law, an insurer has an obligation to consider any settlement demand against its insured in good faith. *See, e.g., New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 295 F.3d 232, 240-41 (2d Cir. 2002) ("Insurers owe a duty to their insureds under New York law 'to act in "good faith" when deciding whether to settle . . . a claim, and . . . may be held liable for breach of that duty.'") (citing *Pavia v. State Farm Mut. Aut. Ins. Co.*, 82 N.Y.2d 445, 452-55, 605 N.Y.S.2d 208, 626 N.E.2d 24 (1993) and *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398-99 (2d Cir. 2000)).

The Policy imposes on CSIC a duty to defend SWH, stating that CSIC "shall have the right and ***duty to defend*** any Claim seeking Damages that are covered by this policy made against an Insured even if any of the allegations of the Claim are groundless, false or fraudulent." Ptf. Ex. 7A at Sec I.B. (emphasis added). In addition, the Policy provides for CSIC to negotiate and settle claims, stating that CSIC "shall have the right to conduct such investigation or ***negotiation*** of any Claim as it deems expedient" and to settle any Claim with SWH's consent. *Id*. (emphasis added). The Policy specifically includes settlements within the definition of "Damages." *Id*. at Sec. VI.E.

Here, the facts demonstrate that CSIC has breached the Policy:

(i)     For two and a half years, CSIC repeatedly acknowledged that coverage would be provided;

(ii)    SWH's representations in the Warranty Statement and Written Application were accurate: SWH had no reasonable basis to believe that the dismissal of class claims in a discrimination case would result in a lawsuit by the Clients, since the issue of the propriety of the court's

---

even if only one potentially falls within the terms of the policy."); *Sherman v. Ambassador Ins. Co.*, 670 F.2d 251 (D.C. Cir. 1981) ("If an insurer refuses to defend an action against an insured based on a claim actually within the policy's coverage because it erroneously, although honestly, assumed that the claim was outside the policy's coverage, it is liable for breach of contract.").

17

striking of the class claims was preserved for appeal and the individual claims were allowed to proceed;

(iii) SWH was harmed as a result of its reliance on CSIC's repeated acknowledgements of coverage for the Malpractice Claims under the Policy in the two and a half years leading up to CSIC's declination of coverage;

(iv) CSIC failed to reserve its rights or disclaim coverage based on the Warranty Statement and the Written Application for over two and a half years before relying on the Warranty Statement and the Written Application to deny coverage; and

(v) CSIC unreasonably declined to engage in negotiations in response to a settlement demand within policy limits.

On the foregoing facts, CSIC has breached both its duty to defend and its obligation to consider in good faith a settlement demand within the limits of the Policy. *See* Sanford Decl. ¶ 21; Ex. M.

## II.   CSIC IS ESTOPPED FROM DISCLAIMING COVERAGE.

The doctrine of estoppel precludes an insurance company from denying or disclaiming coverage where the insured "relied to its detriment on that coverage and was prejudiced by the delay of the insurance company in denying or disclaiming coverage based on the loss of the right to control its own defense." *Liberty Ins. Underwriters, Inc. v. Arch Ins. Co.*, 61 A.D.3d 482, 482 (N.Y. App. Div. 1st Dep't 2009); *accord Walker v. American Ice Company*, 254 F. Supp. 736 (D.D.C. 1966) (insurer estopped from denying coverage), *aff'd National Union Fire Ins. Co. of Pittsburgh v. Aetna Cas. & Surety Co.*, 384 F.2d 316 (D.C. Cir. 1967). A reservation of rights "does not qualify as a timely disclaimer." *Henner v. Everdry Marketing and Management*, 74 A.D.3d 1776 (N.Y. App. Div. 2010). Thus, whether an insurer issued a reservation of rights is irrelevant to the question of estoppel. *See Mount Vernon Fire Ins. Co. v. J.J.C. Stucco & Carpentry Corp.*, 1997 WL 177864, at *3 (E.D.N.Y. 1997).

An insurer is estopped from denying coverage if it: (i) undertook to defend its insured (ii) with knowledge of a coverage defense and (iii) unreasonably delayed disclaiming coverage on the basis of that defense, (iv) causing prejudice to the insured party. *See Mount Vernon Fire Ins. Co.*, 1997 WL 177864 at *2. The reasonableness of an insured's delay in denying coverage is judged from time that the insurer was aware of sufficient facts to issue a disclaimer. *Bluestein & Sander v. Chicago Ins. Co.*, 276 F.3d 119, 122 (2d Cir. 2002) (legal malpractice insurer's delay of nine months after receipt of interrogatory responses was unreasonable); *see also Silverman Sclar Byrne Shin & Byrne P.C. v. Chicago Ins. Co.*, No. 03-CV-0308 (DLI)(MDG), 2005 WL 2367709, at *5 (E.D.N.Y. Sept. 27, 2005).

Moreover, if an insurer "offers no explanation for its delay, the delay will be considered unreasonable as a matter of law." *Mount Vernon Fire Ins. Co.*, 1997 WL 177864 at *2 (insurer's delay of one year and four months since receiving bill of particulars against its insured was unreasonable); *Bluestein*, 276 F.3d at 122; *see Hartford Ins. Co. v. County of Nassau*, 46 N.Y.3d 1028 (N.Y. 1979) (insurer's two month delay was unreasonable as a matter of law where insurer provided no explanation for its delay).

Here, CSIC is estopped from disclaiming coverage under the Policy for the Malpractice Claims because:

> (i) CSIC specifically advised SWH and Mr. Sanford that coverage is available for this Malpractice Claims [Ptf Ex. 6G at 1];
>
> (ii) CSIC undertook the defense of Mr. Sanford and SWH in the Howard Action [Ptf. Ex. 7H; *see* Sanford Decl. ¶¶ 18];
>
> (iii) CSIC had actual knowledge of all of the facts upon which it based its denial of coverage by February 2010 and constructive knowledge of such facts by April 2008 – as much as two and a half years before CSIC issued its Declination Letter [Ptf. Exs. 7D, 7E, 7F, 7G];

19

(iv) Mr. Sanford and SWH relied on CSIC's repeated acknowledgements of coverage by firing the counsel of their choice and relinquishing control of the defense of the Howard Action to CSIC's chosen counsel [Ptf. Ex. 7G ("If you choose not to have CSIC defend, … [t]here will be no further coverage under the Policy."); Sanford Decl. ¶¶ 19-20]; and

(v) Mr. Sanford and SWH have been prejudiced as a result of CSIC's unreasonable delay in disclaiming coverage both monetarily and due to their loss of control over the defense of the Howard Action [Sanford Decl. ¶ 20].

The Motion is silent regarding the foregoing facts.  These facts, however, preclude summary judgment in favor of CSIC on its obligation to provide coverage.  Insofar as these facts are in dispute, summary judgment is not appropriate.

## III.   CSIC WAIVED ITS COVERAGE DEFENSES.

Facts omitted from the CSIC Motion demonstrate that CSIC waived its coverage defenses based on the warranty statement and Written Application.  An insurer has a duty to make a prompt, specific and nonselective disclaimer of coverage.  *See Estee Lauder Inc. v. OneBeacon Insurance Group*, LLC, 62 A.D.3d 33, 35, 38 (N.Y. App. Div. 1st Dep't 2009).  It is well-settled that "where … an insurer actually asserts certain policy defenses, whether by disclaimer or reservation of rights, *the insurer is deemed to have waived any other unasserted grounds for refusing coverage.*"  *Olin Corp. v. Insurance Company of North America*, No. 84 Civ. 1968 (TPG), 2006 WL 509779, at *4 (S.D.N.Y. Mar. 2, 2006) (emphasis added) (denying insurer's motion for summary judgment on late notice defense where insurer reserved its rights regarding coverage and punitive damages, but not timely notice).  *See also MCI LLC v. Rutgers Casualty Insurance Co.,* No. 06 Civ. 4412 (THK), 2007 WL 2325867, at *7 (S.D.N.Y. Aug. 13, 2007) (insurer waived defenses not asserted in disclaimer letters or reserved); *Estee Lauder*, 62 A.D.3d at 35 (insurer's sweeping reservation of rights regarding missing policy defense did not prevent waiver of right to assert late-notice defense); *accord Continental Cas. Co. v. Hartford*

*Fire Insurance Co*. 116 F.3d 932, 939 n.8 (D.C. Cir. 1997) (insurer waived defense of late notice where it reserved right to deny coverage only on ground that there was no liability during its policy period).

Waiver is "'a voluntary and intentional relinquishment of a known right.'"  *State of New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1431 (N.Y. 1991) (citations omitted); *MCI*, 2007 WL 2325867 at *7 (citations omitted).  Waiver may be established where there is "direct or circumstantial proof that the insurer intended to abandon the defense." *AMRO Realty Corp.*, 936 F.2d at 1431(citations omitted).  An irrevocable waiver may be found "where the words or acts of the insurer reasonably justify the conclusion that with full knowledge of all the facts, it intended to abandon or not to insist upon the particular defense afterward relied upon." *Id*.

An insurer is deemed to have knowledge sufficient for a waiver if it has sufficient information to put it on notice of the defense at the time that it declines liability on other grounds. *Olin Corp*., 2006 WL 509779 at *3; *Estee Lauder*, 62 A.D.3d at 36 (insured's letter providing notice of a potential claim and subsequent letter stating that it had been identified as a "potential responsible party" provided insurer with sufficient knowledge of the circumstances relating to its defense of untimely notice).  The fact that additional information might later become known which would lend additional support to an insurer's defense does not affect its waiver. *Olin Corp.*, 2006 WL 509779 at *4.

It is undisputed that CSIC did not even mention the Warranty Statement or the Written Application in any correspondence with SWH until it issued the Declination Letter on November 8, 2010.  *See* Ex. H; Ptf. Exs. 7E, 7G, 7H.  In three preceding letters, dating back to May 2008, CSIC specifically reserved its rights under certain provisions in the Policy but failed to reserve its rights with respect to either the Warranty Statement or the Written Application.

*See* Ptf. Exs. 7E, 7G, 7H.  As a matter of law, CSIC has waived those defenses to coverage.  *See*

*Olin,* 2006 WL 509779 at *4.

Moreover, the general reservation of rights that CSIC included in its prior letters

to SWH did not effectively preserve CSIC's defenses based on the Warranty Statement or the

Written Application.  In letters dated May 7, 2008, March 23, 2010, and May 11, 2010, CSIC

included the following language generally reserving its rights:

> CSIC's position with respect to this matter is based on the
> information provided to date, and is subject to further evaluation ***as***
> ***additional information becomes available***.   CSIC respectfully
> reserves all of its rights and defenses under the Policy and
> available at law, including the right to assert additional Policy
> terms and provisions which may become applicable ***as new***
> ***information is learned***.

Ptf. Exs. 7E at 2 (emphasis added), 7G at 3 (emphasis added), 7H at 2 (emphasis added).

Notably, two of these three letters were written ***after*** Defendants provided CSIC with the

Howard Action Complaint.  *See* Ptf. Ex. 7F.

By February 2010 at the latest, CSIC had ***actual*** knowledge of every fact upon

which it based its November 2010 disclaimer.  CSIC has not identified, nor can it now identify,

any "additional" or "new" information that became available to it after CSCI specifically and

repeatedly reserved its rights.  *See AMRO Realty Corp.*, 936 F.3d at 1433 n.13 (rejecting

insurer's argument that reservation of rights "to rely on additional reasons for disclaimer should

they become apparent in the future" precluded waiver of late notice defense because that defense

did not "become apparent" after receipt of complaint).  In short, as a matter of law, CSIC has

waived its defenses based on the Warranty Statement and the Written Application and cannot

rely on these defenses to deny coverage for the Malpractice Claims.  Accordingly, CSIC is not

entitled to summary judgment based on these defenses.

## IV.   CSIC'S RELIANCE ON AN AMBIGUOUS POLICY PROVISION TO DENY COVERAGE DEFEATS SUMMARY JUDGMENT.

Ambiguities in an insurance policy are construed against the insurer.  *See Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006).   If the language in a policy "is doubtful or uncertain in its meaning, any ambiguity must be resolved in favor of the insured and against the insurer." *Id.*; *see Hotel des Artistes v. General Accident Ins. Co. of America*, 9 A.D.3d. 181, 189 (N.Y. App. Div. 1st Dep't 2004) ("ambiguities in an insurance policy must be construed against the insurer-drafter").    The burden on the insurer is "a heavy one." *Parks Real Estate Purchasing Group,* 472 F.3d at 42.

"Whether an insurance policy is clear or ambiguous is a threshold question of law for the court to decide." *Mossa v. Provident Life and Casualty Insurance Co.*, 36 F. Supp. 2d 524, 527 (E.D.N.Y. 1999)   "An ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Parks Real Estate Purchasing Group*, 472 F.3d at 42; *see Mossa*, 36 F. Supp. 2d at 527 ("Language of an insurance contract will be deemed ambiguous if reasonable minds could differ as to its meaning.").

In addition to defenses based on the Warranty Statement and Written Application, which CSIC waived, CSIC relies for its coverage declination on conditions precedent set forth in Section I.A.(2)(b), as modified by Endorsement No. 2.  This provision, however, is ambiguous and therefore does not support CSIC's denial of coverage for the Malpractice Claims.  The provision provides:

> It is a condition precedent to coverage under the Policy that the act or omission that is the subject of a Claim occurred: . . .

23

(2) on or after December 10, 2004, provided that all of the following three conditions are met:

> (a) the Insured did not notify any prior insurer of such act or omission or Related Act or Omission; and

> (b) **_prior to the inception date of the first policy issued by [CSIC] if continuously renewed_**, no insured had any basis (1) to believe that any Insured had breached a professional duty; or (2) to foresee that any such act or omission or Related Act or Omission might reasonably be expected to be the basis of a Claim against any Insured; and

> (3) there is no policy that provides insurance to the Insured for such liability or Claim.

Ptf. Ex. 7A, at Sec. I.A and Endorsement No. 2 (emphasis added).[11]

As a threshold matter, it is undisputed that SWH has satisfied the following conditions precedent to coverage for the Malpractice Claims under Section I.A.(2):

> (a) SWH did not notify any prior insurer of such act or omission or Related Act or Omission"; and . . .

> (c) there is no policy that provides insurance to [SWH] for such liability or Claim.

Moreover, according to the undisputed facts disclosed by CSIC, subsection (b) is ambiguous on its face.  Specifically, subsection (b) refers to "the first policy issued by [CSIC] if continuously renewed."  *Id*.  CSIC concedes that the Policy was not the "first policy issued" by CSIC to SWH.  CSIC admits that the **_2004 Policy_** was the first policy ever issued by CSIC to SWH and further admits **_that the 2004 Policy was not renewed_**.  *See* Plaintiff's Memorandum at

---

[11]    Endorsement No. 2 to the Policy replaced the language "prior to the Policy Period" with the words "on or after December 10, 2004" in the first clause of Section I.A.(2)(b).  Ptf. Ex. 7A, at Sec. I.A and Endorsement No. 2.  CSIC misquoted this provision, using the language before it was modified by Endorsement No. 2, in its November 2010 letter disclaiming coverage, as well as in its complaint in this action.  *See* Ptf. Ex. 9 at 4; Complaint (Dkt. No. 1) ¶ 22.

5; Ptf. Ex. 9 at 5.  Since the "first policy issued" by CSIC to SWH was the 2004 Policy, and the

2004 Policy was not renewed, neither the 2004 Policy nor the Policy fall within the terms of

subsection (b), because neither is "the first policy issued by [CSIC] if continuously renewed."

Whether Section I.A.(2)(b) constitutes sloppy drafting by CSIC or an intent to

have condition (b) apply only to the first policy ever issued to SWH by CSIC – which was the

2004 Policy – is unclear.  What is clear is that the provision is ambiguous on its face.[12]

Confronted with this ambiguity, CSIC attempts to unilaterally re-write the

language of Section I.A(2)(b) so that the Policy will fall within its terms and CSIC can rely on

this provision to deny coverage for the Malpractice Claims.  In the Declination Letter, CSIC

replaced the word "if" with the word "and" to argue that the Policy "was the first policy issued

by CSIC to the Firm **and** continuously renewed."  Ptf. Ex. 9 at 5.   In the Motion, CSIC again

tries to re-write this provision to jibe with its position, arguing without authority that because the

Policy "is not a renewal of any prior policy issued by CSIC to the firm, its inception date

controls."  Plaintiff's Memorandum at 11.  The language Section I.A(2)(b), however, does not

address the current situation in which the Policy is not the "first policy issued" by CSIC, and the

"first policy issued" by CSIC (the 2004 Policy) was not "continuously renewed."   Accordingly,

Section I.A(2)(b) is ambiguous and must be construed in favor of SWH.

---

[12]     In addition to the ambiguities referenced above, Section I.A.(2)(b), as modified by
Endorsement No. 2, is ambiguous because the language of Section I.A.(2)(b)(2) is
superfluous in light of the language of Section I.A.(2)(b)(1).  Specifically, an insured
would not have any basis "to foresee that any such act or omission or Related Act or
Omission might reasonably be expected to be the basis of a Claim" against it unless it
already had a basis to believe that it "had breached a professional duty."  *See* Ptf. Ex. 7A,
at Sec. I.A(2)(b) and Endorsement No. 2.

**CONCLUSION**

For the reasons set forth therein, Defendants respectfully request that the Court deny Plaintiff's Motion for Summary Judgment.

Respectfully Submitted on this 25th day of March, 2011

/s/ Stefanie Roemer
Stefanie Roemer, D.C. Bar No. 464450
Kristen Walsh, D.C. Bar No. 495767
**SANFORD WITTELS & HEISLER, LLP**
1666 Connecticut Avenue, N.W., Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7777
Facsimile: (202) 742-7776