**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAPITOL SPECIALTY ) <br> INSURANCE CORPORATION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SANFORD WITTELS & ) <br> HEISLER, LLP; and ) <br> ) <br> DAVID SANFORD, ) <br> ) <br> Defendants. ) <br> ) | Case No.: 1:10-cv-02079-ESH <br><br> Assigned to: Huvelle, Ellen S. <br><br> Assign Date: 12/8/2010 <br><br> Description: Contract |

**REPLY IN SUPPORT OF**
**CAPITOL SPECIALTY INSURANCE CORPORATION'S**
**MOTION FOR SUMMARY JUDGMENT**

Richard A. Simpson
(D.C. Bar No. 411893)
Marc E. Rindner
(D.C. Bar No. 461250)
WILEY REIN, LLP
1776 K Street, NW
Washington, D.C.  20006
Telephone (202) 719-7000
Facsimile (202) 719-7049

*Counsel for Plaintiff Capitol Specialty*
*Insurance Corporation*

I.      **INTRODUCTION**

This is a straight-forward insurance contract dispute. It boils down to two simple and undisputed facts, each of which separately is dispositive of coverage under the Policy for the Malpractice Action.[1] First, the Firm and Sanford (the "Defendants") knew *before* the inception date of the Policy of their admitted negligence underlying and giving rise to the Malpractice Action. Second, the Firm and Sanford did not disclose this information to CSIC in connection with their procurement of the Policy and, instead, the Firm represented and warranted to CSIC that, "[a]fter enquiry" no attorney of the Firm was aware of any circumstance or incident that could give rise to a **Claim**.

No doubt because they have no reasonable argument that the Policy as written provides coverage for the Malpractice Action, the Firm and Sanford focus their brief on waiver and estoppel arguments. These arguments are patently meritless. As the documents submitted by Defendants themselves demonstrate, CSIC has reserved its rights from the outset of the matter, including specifically with respect to knowledge of a potential **Claim** prior to the inception date of the Policy. CSIC also has provided a defense for the Firm and Sanford, subject to a complete reservation of rights, and continues to do so. Furthermore, even if there were some factual basis for Defendants' arguments, which there is not, coverage cannot be created by waiver or estoppel. Here, the most fundamental condition precedent to coverage under this Policy and claims-made policies generally—the absence of knowledge of a potential claim before the policy was issued—is not satisfied.[2]

---

[1] All terms defined in CSIC's opening brief carry the same meaning in this reply brief.

[2] Since CSIC filed its motion for summary judgment, the Clients have filed an amended complaint in the Malpractice Action – a copy of which (without the exhibits) is attached hereto as Exhibit A for the Court's reference. The amended pleading does not bear on the coverage issues presented.

II.     ARGUMENT

    A.     **There Is No Coverage for the Malpractice Action Because the Prior Knowledge Condition Is Not Satisfied**

        1.     **The Prior Knowledge Condition Is Unambiguous**

The Firm and Sanford contend that the Prior Knowledge Condition should not be enforced as written because it is "ambiguous on its face." Whether the Prior Knowledge Condition is ambiguous is a question of law, which this Court previously resolved in *Ross v. Continental Insurance Company*, 420 B.R. 49 (D.D.C. 2009), *aff'd* 2010 WL 3721542 (D.C. Cir. Sept. 2010).[3] Like the Prior Knowledge Condition here, the policy provision at issue in *Ross* included as a condition precedent to coverage that "prior to the inception date of the first policy issued by the **Company** . . . , if continuously renewed; . . . no **Insured** had a basis to believe that any such act or omission, or **related act or omission**, might reasonably be the basis of a **claim**." *See id.* at 53. The Court in *Ross*, which Defendants fail to cite, concluded unequivocally that the provision "is not ambiguous on its face." *See id.* at 54.

As *Ross* recognized, the policy language at issue in this case is not susceptible to more than one *reasonable* interpretation. In this regard, it is well-settled that "[a]n insurance contract is not 'ambiguous merely because the parties do not agree on the interpretation of the contract provision in question,'" *see Sigmund v. Progressive N. Ins. Co.*, 374 F. Supp. 2d 33, 36 (D.D.C. 2005) (quoting *Bryd v. Allstate Ins. Co.*, 622 A.2d 691, 694 (D.C. 1993)), or because the provision may have been stated differently or more precisely. *See PCH Mut. Ins. Co. v. Cas. &*

---

[3] As set forth in CSIC's Opposition to Defendants' Motion to Transfer and to Suspend Obligation to Answer, which is incorporated herein by reference, District of Columbia law applies in this case under the "most significant interest" choice of law analysis. Moreover, and in any event, the Court conducts the analysis *only* where "a 'true conflict' exists between the laws of competing jurisdictions." *See Sloan v. Urban Title Ins. Co.*, 689 F. Supp. 2d 94, 105 (D.D.C. 2010). As Defendants themselves concede in footnote 9 of their brief, New York and District of Columbia law are the same with respect to the issues relevant here. Accordingly, the Court is to apply District of Columbia law. *See id.* at 105 ("Where no true conflict exists, a court applies the law of the District of Columbia by default.").

*Sur., Inc.*, No. 08-00282, 2010 WL 4627719, at *15 (D.D.C. Nov. 15, 2010) ("'The relevant question is not whether the contract uses the most precise language a court can imagine ex post.'") (quoting *Hunt Constr. Group, Inc. v. Nat'l Wrecking Corp.*, 587 F.3d 1119, 1122 (D.C. Cir. 2009)); *Dist. No. 1-Pacific Coast Dist. v. Travelers Cas. & Sur. Co.*, 782 A.2d 269, 274 (D.C. 2001) ("A contract is not ambiguous . . . merely because its terms are complex or 'could have been clearer.'") (citation omitted); *see also Fox v. Employers' Liab. Assur. Corp.*, 276 N.Y.S. 917, 920 (App. Div. 1935). Policy language is "genuinely ambiguous" only if "it is susceptible to more than one reasonable interpretation." *See Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1127-28 (D.C. 2001) (citation omitted).

Defendants focus on the phrase "the inception date of the first policy issued by [CSIC] if continuously renewed," arguing that it is ambiguous in this situation whether that language refers to the inception date of the Policy – *i.e.*, December 10, 2007. According to Defendants, despite the undisputed fact that the Policy is not a renewal of any prior policy issued by CSIC to the Firm [Ex. 7, Thompson Declaration at ¶ 7], the Prior Knowledge Condition may refer to some other unspecified date, including, possibly, December 10, 2004, which is the inception date of a prior policy that CSIC had issued to the Firm.[4] As the record evidence establishes and Defendants acknowledge, however, that policy was not "continuously renewed." [*Id.*]

That the relevant date is December 10, 2007 is consistent not only with the plain language of the Prior Knowledge Condition, but also the very nature of claims-made coverage. It is rightly well-recognized that "[an] insurance company is entitled to protect itself against the professional who, recognizing his past error or omission, rushes to purchase a 'claims-made'

---

[4] "[Ex. __]" refers to the exhibits attached the Declaration of Marc E. Rindner, which was filed contemporaneously with CSIC's opening brief on February 18, 2011. "[DEx. __]" refers to the exhibits filed by Defendants in connection with their opposition brief on March 25, 2011.

- 3 -

policy before the error is discovered and a claim is asserted against him." *See Ross*, 420 B.R. at 54 (quoting *Zuckerman v. Nat'l Union Fire Ins. Co.*, 495 A.2d 395, 403-04 n.3 (N.J. 1985)); *see also Bryan Bros. Inc. v. Cont'l Ins. Co.*, 704 F. Supp. 2d 537, 541 (E.D. Va. 2010), *aff'd* 2011 WL 1058851, at *4 (4th Cir. Mar. 24, 2011) (recognizing that a similar prior knowledge condition furthers the "concept of fortuity, a fundamental premise of insurance law").

Defendants' interpretation, on the other hand, improperly ignores the "continuously renewed" language in the Prior Knowledge Condition, and, moreover, undermines the principles on which claims-made coverage rests. *See Am. Ctr. for Int'l Solidarity v. Fed. Ins. Co.*, 518 F. Supp. 2d 163, 172 (D.D.C. 2007). It makes no difference to the application of the fundamental principle of fortuity whether the insured has never been insured by CSIC, or instead has had a gap in coverage. The point is that CSIC was not the Firm's insurer when it applied for the Policy, which provides coverage for claims based on acts committed before the inception date of the Policy. The only reasonable reading of the "if continuously renewed" language is to set as the dispositive date for application of the Prior Knowledge Condition the inception date of the first in any string of continuously renewed policies, with no gap in coverage. Setting that as the date for measuring prior knowledge accords with the plain meaning of the applicable policy language (*i.e.*, "if continuously renewed"), the rationale of the fortuity principle addressed by the Prior Knowledge Condition, and common sense.

In sum, the only reasonable interpretation of the Prior Knowledge Condition is that it requires that no **Insured**, prior to December 10, 2007, had any basis: (1) to believe that any **Insured** had breached a professional duty; or (2) to foresee that any act or omission by an **Insured** might reasonably be expected to be the basis of a **Claim**. [Ex. 7A, Policy, Section I.A.2, as amended by Endorsement No. 2.]

## 2. The Prior Knowledge Condition Is Not Satisfied

The Prior Knowledge Condition plainly enumerates two distinct categories of knowledge before the inception date, either of which will bar coverage. Defendants, however, ignore the first category (having a basis to believe that any **Insured** had breached a professional duty), dismissing it simply as "superfluous" in light of the second category. This approach is indefensible, since none of a policy's terms can be "assumed to be superfluous or to have been idly inserted." *See Bretton v. Mut. of Omaha Ins. Co.*, 492 N.Y.S.2d 760, 762-63 (App. Div. 1985) ("a court [cannot] disregard the provisions of an insurance contract which are clear and unequivocal") (internal citations omitted); *see also Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1417 (D.C. Cir. 1995) (rejecting interpretation of policy provision that "results in a strained reading of the clause and renders words superfluous"). The Court must interpret a contract in a manner that gives effect to all of its provisions. *See Am. Ctr. for Int'l Labor Solidarity*, 518 F. Supp. 2d at 172.

Subparagraph (1) of the Prior Knowledge Condition unequivocally establishes as a condition precedent to coverage that no **Insured** had a "basis . . . to believe that any **Insured** had breached a professional duty." Defendants do not, and cannot, dispute that, before December 10, 2007, they had a basis to believe – and, indeed, actually knew and had acknowledged in public filings – that they had breached a professional duty by failing to move for class certification in the Underlying Employment Action within the time prescribed. As discussed in detail in CSIC's opening brief, missing a mandatory filing deadline is a quintessential breach of a professional duty. This breach indisputably was brought to the attention of the Firm and Sanford no later March 17, 2006, when it served as the basis for the Department's motion to strike the class claims in the Underlying Employment Action. *See In re Belmar*, 319 B.R. 748, 754-55 (Bankr. D.D.C. 2004) (concluding as a matter of law, and without the need for expert testimony, that

attorneys for a Chapter 7 debtor "breached the [applicable] standard of care by failing to timely file an opposition [to stay relief motion] or seek an extension of time in which to file such an opposition"); *see also Worth v. Tamarack Am.*, 47 F. Supp. 2d 1087, 1095 (S.D. Ind. 1999) ("We harbor no reluctance in concluding that [the insured attorney] had a reasonable basis to believe, at or before the time the policy became effective, that he breached a professional duty to [his client] when he failed both to comply with [the deadline for perfecting service on the government] and to offer a good faith excuse for doing so, resulting in [the] dismissal of [the] action."), *aff'd* 210 F.3d 377 (7th Cir. 2000).

As to Subparagraph (2) of the Prior Knowledge Condition, which addresses knowledge of facts that "might reasonably be expected to give rise to a **Claim** against any **Insured**," the record establishes that the Firm and Sanford possessed such knowledge before December 10, 2007, based on their failure to file a timely motion for class certification in the Underlying Employment Action. The determinative issue here is the objective reasonable attorney view of the facts known to the Firm and Sanford at the relevant time, not any purported subjective beliefs of the **Insureds** as to the likelihood of a **Claim** being made. *See Ross*, 420 B.R. at 49 ("[w]hether the [insured] could have reasonably foreseen [a] malpractice claim is an objective test that can be determined as a matter of law").[5] The facts indisputably known to the **Insureds** here include:

---

[5] *See also Weddington v. United Nat'l Ins. Co.*, 346 F. App'x 224, 226 (9th Cir. 2009) (noting that the use of the word "reasonably" in a prior knowledge provision indicates that an objective standard should apply and that the provision "does not call for the exercise of the insured's judgment as to the probability of a claim"); *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 (3d Cir. 1998) (interpreting similar policy language and noting that, first it must be shown that the insured knew certain facts and then "it must be determined that a reasonable lawyer in possession of such facts would have had a basis to believe that the insured had breached a professional duty"); *Bryan Bros.*, 704 F. Supp. 2d at 537 (asking whether a reasonable person in the insured's potion would have had a basis to believe that her actions might lead to a claim) *aff'd* 2011 WL 1058851 (4th Cir. Mar. 24, 2011); *Quanta Lines Ins. Co. v. Investors Capital Corp.*, 2009 WL 4884096, at *16 n.5 (S.D.N.Y. Dec. 17, 2009) (determining what facts were known to the insured and then asking whether "a reasonable attorney in possession of these facts would have a basis to anticipate" a potential claim).

- the Firm and Sanford had missed the filing deadline;

- the Firm and Sanford had been chastised by the Court for their admitted error in doing so;

- the Clients' class claims had been dismissed based on Defendants' error; and

- efforts to mitigate the error, including seeking reconsideration and interlocutory appeal, had failed.

From an objective standpoint, such facts "[lead] ineluctably to the conclusion that a malpractice claim against [the Firm and/or Sanford] was a reasonably foreseeable event." *See id.* at 55.

Defendants do not grapple with this objective assessment. Instead, they attempt to side step the point altogether by directing the Court's attention to Sanford's self-serving declaration, which offers two after-the-fact rationales for why he and the Firm supposedly did not believe that their admitted breach of duty in the Underlying Employment Action might lead to a **Claim** against them: (1) when the Court dismissed the Clients' class claims in the Underlying Employment Action, the Clients did not express an intent to file a lawsuit against the Firm or Sanford; and (2) the Firm and Sanford believed (and continue to believe) that any malpractice claim would be meritless because the Clients have been able to proceed with their individual claims of discrimination and have preserved their right to appeal the dismissal of their class claims.[6] Not only are Defendants' subjective beliefs as to the potential for a **Claim** entirely immaterial to the required analysis, *see Ross*, 420 B.R. at 54-55, but also the rationales offered for their alleged subjective beliefs are ones that courts routinely have found unpersuasive in this context. *See, e.g., Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatkis*, 799 F.2d 218,

---

[6] Defendants seem to suggest that any dispute regarding these facts, among others, provides grounds to deny or defer consideration of CSIC's motion for summary judgment under Fed. R. Civ. P. 56(d). Notably, however, Defendants' have not provided any affidavit or declaration even attempting to demonstrate that, "for specified reason, [they] cannot present facts essential to justify [their] opposition." Surely, Defendants' subjective beliefs are within their own knowledge; those subjective beliefs are also entirely irrelevant to the objective inquiry mandated by the Prior Knowledge Condition.

224 (5th Cir. 1986) (whether client has indicated an intent to sue for malpractice is irrelevant to whether insured should have foreseen potential for a claim); *Int'l Surplus Lines Ins. Co. v. Univ. of Wyo. Research Corp.*, 850 F. Supp. 1509, 1521 (D. Wyo. 1994) (prior knowledge provision "does not require that the persons know that a claim has already been threatened, but only whether such a claim could reasonably be anticipated in the future"), *aff'd sub nom.*, *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.,* 52 F.3d 901 (10th Cir. 1995); *Mt. Airy Ins. Co. v. Thomas*, 954 F. Supp. 1073, 1080 (W.D. Pa. 1997) ("Any dispute over whether the defendant believed, on the basis of his relationship with his client or his impression of that client's reaction to the situation, that the client *would* make a claim is not relevant to our analysis"), *aff'd* 149 F.3d 1165 (3d Cir. 1998); and *Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, No. 10-3159, 2011 WL 678383, at *4 (10th Cir. Feb. 28, 2011) (insured failed to satisfy prior knowledge condition when it failed to notify insurer of potential claim that insured considered meritless, reasoning that "[t]he threat of a claim, even an unfounded one, is relevant to the insurer's exposure"); *Tewell, Thorpe & Findlay, Inc. v. Cont'l Cas. Co.*, 825 P.2d 724, 728 (Wash. Ct. App. 1992) (prior knowledge provision "does not imply that the potential claims of which the insurance company must be informed necessarily have merit").

In short, Defendants cannot create coverage under the Policy through post-hoc subjective rationalizations as to the potential for a **Claim** or by ignoring or misconstruing the clear and unambiguous language of the Policy. The Prior Knowledge Condition must be enforced as written and, because it has not and cannot be satisfied, there is no coverage as a matter of law. Accordingly, CSIC is entitled to summary judgment in its favor on Count I of the Complaint.

### B. The Insureds' Breach of Warranty Precludes Coverage for the Malpractice Action

CSIC is entitled to summary judgment in its favor with respect to Count II as well because the **Insureds**' breach of warranty provides a separate and independent basis on which there is no coverage as matter of law for the Malpractice Action.

In their opposition brief, Defendants do not grapple with the meaning or import of the Firm's warranty provided to CSIC through its response to Question 6(b) of the Written Application and the Warranty Statement.[7]  [Exs. 7A and 7B.]  Nor do Defendants contest CSIC's position that the warranty was breached, except to point to their self-serving, post-hoc rationalizations as to why they subjectively did not believe there was any potential for a **Claim** resulting from their admitted breach of duty.  Once again, however, Defendants' subjective beliefs are irrelevant. [8]

---

[7] Defendants seem to suggest that there is some question as whether the Written Application, which is a form from Certain Underwriters at Lloyd's, is the application submitted to CSIC for the Policy. [Ex. 7B.] Endorsement No. 3 to the Policy quite clearly resolves any such question by providing:

> It is understood and agreed that the application for Lawyer's Professional Liability Insurance submitted to Lloyd's, and dated November 1, 2007, by Jeremy Heisler, the **Named Insured**, shall be treated as if it were submitted directly to Darwin Professional Underwriters, Inc. ("Darwin") and the Underwriter/Insurer identified in the Declarations, and Darwin and the Underwriters/Insurer identified in the Declarations shall succeed to the rights and interests of the insurer named in that application.
>
> Such application will be treated at the **Application** for this Policy . . . .

[Ex. 7A at Endorsement No. 3.]  The Underwriters/Insurer identified in the Declarations is "Capitol Specialty Insurance Corporation."  [*Id.* at Declarations.]  Moreover, to the extent there is any question about the relationship between Darwin Professional Underwriters, Inc. and CSIC, correspondence in the record makes clear that Darwin is the claims manager for CSIC.  [Ex. 7E.]  Indeed, Defendants' initial and subsequent report of this matter under the Policy was directed to "Darwin Claims."  [Exs. 7D and 7F.]

[8] To be clear, Defendants do not assert that CSIC has waived it position with respect to the Prior Knowledge Condition.

Defendants seek to escape the consequences of the Firm's non-disclosure by contending that CSIC has waived the right to deny coverage based on the Firm's breach of warranty. In fact, however, CSIC has not waived any of its coverage defenses.

"Waiver requires an intentional relinquishment of a known right." *See Travelers Indem. Co. of Ill. v. United Food & Comm. Workers Int'l Union*, 770 A.2d 978, 992 (D.C. 2001). Indeed, as the cases cited by Defendants make clear, "proof that the insurer intended to abandon a [coverage] defense is the touchstone of waiver." *See MCI LLC v. Rutgers Cas. Ins. Co.*, 2007 WL 2325867, at *7 (S.D.N.Y. 2007) (internal citations omitted). Defendants do not, and cannot, point to any evidence that CSIC intended to abandon any coverage defense with respect to the Malpractice Action. Quite to the contrary, when Defendants first tendered the **Claim** to CSIC on February 19, 2010 [Ex. 7F], CSIC responded four weeks later on March 23, 2010, advising Defendants in no uncertain terms that "CSIC respectfully reserves all of its rights and defenses under the Policy and available at law."[9] [Ex. 7G.] Also, when Defendants had notified CSIC two years earlier of the potential for a **Claim** in connection with their representation of the Clients in the Underlying Employment Action [Ex. 7D], not only did CSIC reserve "all of its rights and defenses under the Policy and available at law," but also it referenced the Prior Knowledge Condition specifically and further advised the Firm and Sanford of the potential for a denial of coverage for any ensuing **Claim** based on the prior knowledge of an **Insured**. Accordingly, this evidence plainly establishes that CSIC did not, and never intended to, abandon its defenses to coverage. As such, as matter of law, there is no waiver here.

---

[9] Defendants repeatedly assert that CSIC waited more than two and a half years to advise them that the Policy did not afford coverage for the Malpractice Action. This makes no sense. The Malpractice Action was not filed until 2010, and Defendants did not report it to CSIC until the end of February 2010. [Ex. 7F.] At that point, as indicated in its letter of March 23, 2010, CSIC undertook the defense subject to a complete reservation of rights. [Ex. 7G]. Then, in November 2010, after having had the opportunity to investigate the matter and learn additional information regarding the facts and circumstances at issue, CSIC advised Defendants that it had concluded no coverage was available and, subsequently brought suit for declaratory relief. [Ex. 9.]

Moreover, and in any event, it is well-established that the doctrine of waiver cannot be used to create coverage. *See Walker v. Am. Ice Co.*, 254 F. Supp. 736, 741 (D.D.C. 1966) (citing cases). Indeed, as one court recently spelled it out:

> [W]here the issue is the existence or non-existence of coverage (e.g., the insuring clause and exclusions), the doctrine of waiver is simply inapplicable, in as much as that doctrine may not operate to create coverage where it never existed.

*See McCabe v. St. Paul Fire & Marine Ins. Co.*, 914 N.Y.S.2d 814, 816 (App. Div. 2010) (internal quotation marks and citations omitted). Here, the consequence of the breach of warranty is that coverage never existed.[10] This is clear from the Warranty Statement itself, which states that coverage is excluded for any matter that should have been disclosed but was not. [Ex. 7C, Warranty Statement.] The result also is underscored by the legal principle that an affirmative warranty such as that provided by the Firm and Sanford "is in the nature of a condition precedent to the validity of the policy, and if broken in its inception the policy never attaches." *See D&S Realty Inc. v. Markel Ins. Co.*, 789 N.W.2d 1, 15 n.46 (Neb. 2010) (citing Couch on Insurance 3d § 83:13).

### C. CSIC Is Not Estopped From Asserting Its Coverage Defenses

The Firm and Sanford seek to avoid the plain terms of the Prior Knowledge Condition and the Warranty Statement by arguing that CSIC is estopped from denying coverage based on its alleged "bad faith" conduct. This estoppel argument cannot withstand even minimal analysis; it fails on both the undisputed facts and established law.

---

[10] Defendants cite to a string of cases that supposedly stand for the proposition that an insurer waives certain defenses by specifically reserving rights on others. Those cases are inapposite. For one thing, CSIC indisputably and expressly reserved *all* of its rights and defenses to coverage. [Exs. 7E and G.] For another, the cases cited by Defendants involve the waiver of a late notice defense. *See, e.g.*, *Cont'l Cas. Co. v. Hartford Fire Ins. Co.*, 116 F.3d 932 (D.C. Cir. 1997); *MCI*, 2007 WL 2325867; *Olin Corp. v. Ins. Co. of N. Am.*, No. 84-1968, 2006 WL 509779 (S.D.N.Y. Mar. 2, 2006); *Estee Lauder Inc. v. One Beacon Ins. Group, LLC*, 873 N.Y.S.2d 592 (App. Div. 2009). Unlike the defenses raised by CSIC here, late notice is not a defense to coverage. Coverage may exist despite an insured's failure to provide timely notice, and therefore waiving that defense does not create coverage that would not otherwise exist.

### 1. **Defendants' Allegations of Bad Faith Ring Hollow**

As an initial matter, the central premise of Defendants' bad faith allegations is demonstrably false. Specifically, Defendants' primary contention is that CSIC has acted in bad faith by withdrawing from their defense. This simply is not true, as shown by the very documents submitted by Defendants. CSIC's letter of November 8, 2010 states unequicocally that "CSIC will continue to provide a defense, subject to a full and complete reservation of rights . . . ." [Ex. 9.] Likewise, Defendants' assertion that CSIC failed to properly consider a settlement demand within policy limits is factually wrong. The settlement demand to which Defendants apparently refer – *i.e.*, a March 2, 2011 letter from counsel for the Clients in the Malpractice Action – is for $8 million.[11] [DEx. L.] In other words, CSIC was not presented with and did not reject a settlement demand within the $7 million limit of liability under the Policy (which limit is reduced by **Claim Expenses**).[12]

More importantly, as a matter of law, CSIC has no duty to defend or settle, and cannot have acted in bad faith by failing to do so, if there is no coverage for the **Claim** under the Policy in the first place. *See Am. Nat'l Red Cross v. Travelers Indem. Co. of R.I.*, 896 F. Supp. 8, 11 (D.D.C. 1995) ("An insured's claim of bad faith breach of contract against its insurer fails if coverage for the underlying claim does not exist."); *Zurich Ins. Co. v. Texasgulf, Inc.*, 649 N.Y.S.2d 153, 154 (App. Div. 1996) (holding that "a claim of bad faith must be predicated on the existence of coverage" and recognizing that "a mere arguable basis for the insurer's denial of

---

[11] Defendants suggest in their brief that CSIC was hiding the fact of the settlement demand from the Court by not addressing the demand in its motion. Defendants fail to note, however, that the settlement followed the filing of the motion by more than two weeks. Moreover, as explained above, that "fact" is completely irrelevant.

[12] Furthermore, as noted in CSIC's March 11, 2011 response to Defendants' demand that CSIC fund the settlement, Defendants have provided no indication that they believe the Clients' demand reflects the fair settlement value of the Malpractice Action.

coverage has been [held] sufficient to defeat, as a matter of law, a claim of bad faith") (citing cases).

## 2. Defendants Cannot Create Coverage by Estoppel

Even if Defendants' allegations of bad faith had a basis in fact or law, which they do not, it makes no difference here for several reasons.

As a threshold matter, the doctrine of estoppel cannot be used to create coverage that does not otherwise exist. *See Walker*, 254 F. Supp. at 741 ("estoppel cannot be used to extend the coverage or the scope of the policy"); *Ward v. County of Alleghany*, 824 N.Y.S.2d 542, 544 (App. Div. 2006) ("where there is no coverage under the policy, the doctrines of waiver and estoppel may not operate to create such coverage") (internal quotation marks and citations omitted). Accordingly, Defendants' estoppel argument would fail, even if it had some basis in fact.

And, in any event, despite Defendants' protestations to the contrary, this is not a situation in which an insurer remained silent and sat on its hands for years on end in the face of a tender of a suit against its insureds. Rather, after receiving notice of the Malpractice Action in February 2010, CSIC responded promptly, in March 2010, by providing a defense to the **Insureds** while at the same time letting them know that CSIC "reserves all of its rights and defenses under the Policy and available at law." [Ex. 7G.]  *See Diamond Serv. Co., Inc. v. Utica Mut. Ins. Co.*, 476 A.2d 648, 655 (D.C. 1984) (estoppel may be found only where an insurer that has assumed an insured's defense has not given notice of its reservation of rights).

Furthermore, estoppel requires a showing of prejudice to the insured from any purported delay by the insurer. *See Athridge v. Aetna Cas. & Sur. Co.*, 510 F. Supp. 2d 1, 6 (D.D.C. 2007); *Diamond*, 476 A.2d at 658. "[P]rejudice may be shown in one of two ways: (1) by presumption as a matter of law when the insurer assumes complete control over the insured's defense without

- 13 -

a reservation of rights, . . . and (2) by finding prejudice in fact through the evidence presented." *See Athridge*, 510 F. Supp. 2d at 6 (internal citation omitted).  As to the former, there is no dispute that CSIC has been and continues to defend the Firm and Sanford subject to an expressed and complete reservation of rights.  [Exs. 7G and 9.]  As to the latter, Defendants baldly assert that they were prejudiced "due to their loss of control over the defense."  Significantly, however, while Defendants may have had some unspecified preference for Michele Roberts at Akin Gump, they offer no criticism whatsoever of the counsel provided by CSIC – Aaron Handleman of Eccleston & Wolf.  Defendants do not suggest that Mr. Handleman is not qualified or has not fully and competently represented them in the Malpractice Action so far – indeed, Defendants' own recitation of facts in their opposition brief points out Mr. Handleman's success in defeating the Clients' attempt to expand the suit into a potentially more costly class action.

Defendants further assert that they were somehow prejudiced by the fact that they were forced to switch counsel after having retained Ms. Roberts.  In this regard, Defendants point out that they paid approximately $14,000 to Akin Gump that they were not able to recoup after switching counsel.  Defendants, however, do not contend that they did not receive any value or benefit from Ms. Roberts for that amount.  And, to the extent that Defendants actually suffered any loss in this regard, it was their own fault because they retained Ms. Roberts without seeking and obtaining CSIC's consent in contravention of CSIC's right under the Policy to defend the Claim and select defense counsel. [Ex. 7A, Policy, Section I.B.]   Thus, such supposed prejudice cannot serve to negate CSIC's defenses to coverage.

### III.  CONCLUSION

For the reasons discussed above, as well as those set forth in CSIC's opening brief, the Policy affords no defense or indemnity coverage for the Firm and Sanford in connection with the Malpractice Action.  Accordingly, the Court should grant CSIC's motion for summary judgment.

Dated:  April 5, 2011                                         Respectfully submitted,

                                                              /s/ *Marc E. Rindner*
                                                              Richard A. Simpson
                                                              (D.C. Bar No. 411893)
                                                              Marc E. Rindner
                                                              (D.C. Bar No. 461250)
                                                              WILEY REIN, LLP
                                                              1776 K Street, NW
                                                              Washington, D.C.  20006
                                                              Telephone (202) 719-7000
                                                              Facsimile (202) 719-7049

                                                              *Counsel for Plaintiff Capitol Specialty Insurance Corporation*