**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                  )
**CAPITOL SPECIALITY**                            )
**INSURANCE CORPORATION**                         )
                                                  )
    **Plaintiff,**                         )
                                                  )
    **v.**                                )   **Civil Action No. 10-2079 (ESH)**
                                                  )
**SANFORD WITTELS &**                             )
**HEISLER, LLP,** *et al.*                        )
                                                  )
    **Defendants.**                        )
_____           )

## <u>MEMORANDUM OPINION</u>

    Plaintiff Capitol Specialty Insurance Corporation ("Capitol Specialty") brings this action against Sanford Wittels & Heisler, LLP and David Sanford (collectively "Defendants") seeking declaratory relief from coverage on a claims-made-and-reported liability insurance policy issued to the law firm for the policy period of December 10, 2007 to December 10, 2008 (the "Policy"). Plaintiff seeks a judicial determination that the Policy does not provide coverage for a legal malpractice action now pending against Sanford Wittels for which plaintiff is currently providing legal representation.

    Before the Court is plaintiff's motion for summary judgment on its claim for declaratory relief. For the reasons set forth herein, the Court will grant plaintiff's motion for summary judgment.

## BACKGROUND

### I.    FACTS

    Plaintiff Capitol Specialty is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business in Appleton, WI. (Compl. ¶ 4.) Capitol

Specialty transacts insurance business in the District of Columbia.  (*Id.*)  Defendant Sanford

Wittels is a law firm organized and existing under the laws of the State of New York that

regularly transacts business from its Washington, D.C. office.  (*Id.* ¶ 5.)  Co-defendant David

Sanford is a principal officer of the firm and is licensed to practice law in the District of

Columbia.  (*Id.* ¶ 6; Sanford Declaration ["Sanford Dec."].)

### A.    *Howard v. Gutierrez*

In 2004, defendants, in conjunction with the law firm of Grant E. Morris, agreed to

represent three individuals (the "Clients") in a racial discrimination suit against the United States

Department of Commerce ("DOC").  (Plaintiff's Statement of Undisputed Facts ["Pl.'s Facts"] ¶

1.)  On October 5, 2005, defendants filed a suit, captioned *Howard v. Gutierrez*, No. 1:05-cv-

01968 (D.D.C. Oct. 5, 2005) ("Discrimination Action"), on behalf of the Clients individually and

as representatives of a putative class of similarly-situated African American employees.  (*Id.* ¶¶

1-2.)   According to local rules of the United States District Court, the law firm had 90 days from

the date of filing the complaint to file for class certification.[1]

On March 17, 2006, DOC moved to strike the class claims on the ground that the Clients

had missed the filing deadline for class certification.  (Pl.'s Facts ¶ 4.)  On June 23, 2006,

defendants filed an amended complaint and a motion to extend the class certification deadline.

(*Id.* ¶ 5.)  DOC renewed its motion to strike in July 2006, arguing under Local Civil Rule

23.1(b), a motion for class certification was timely as long as it was filed within 90 days of an

---

[1] Local Civil Rule 23.1(b) provides:

> Within 90 days after the filing of a complaint in a case sought to be maintained as
> a class action, unless the court in the exercise of its discretion has extended this
> period, the plaintiff shall move for a certification under Rule 23(c)(1), Federal
> Rules of Civil Procedure, that the case may be so maintained.

amended complaint, as opposed to the original complaint.  (Defs.' Opp'n to Summ. J. ["Defs.' Opp'n"], Ex. D.)  The court was not persuaded by this argument.  On February 6, 2007, Judge Kennedy granted the DOC's motion to strike the class claims, observing that defendants had inexplicably delayed filing its motion for additional time until three months after DOC had filed its first motion to strike.  *Howard v. Gutierrez*, 474 F. Supp. 2d 41, 56-57 (D.D.C. 2007) (Kennedy, J.).  Defendants then moved to reinstate the class claims or, in the alternative, to certify the question for interlocutory appeal.[2]  (Pl.'s Facts ¶ 9.)  On September 7, 2007, Judge Kennedy denied defendants' motion, noting that defendants did not rely on their reading of the local rule "until after they realized they had already missed the filing deadline by more than two and a half months" and that instead, they "hoped, through the filing of an amended complaint, to resurrect their ability to file a motion that *they already knew was already several months out of time*."  *Howard v. Gutierrez*, 503 F. Supp. 2d 392, 395-96 (D.D.C. 2007).  The court also observed that defendants' "post hoc rationalizations" for missing the certification deadline did little to conceal the fact that defendants "ha[d] no excuse beyond attorney mistake for their failure to file a timely motion for class certification."  *Id.* at 396.  Following this ruling, the Clients retained new counsel and pursued their individual claim against DOC.  (Defs.' Opp'n at 8.)  Defendants did not hear anything further from the Clients until March 20, 2008.  (*Id.*)

---

[2] In several instances, defendants contest Capitol Specialty's Statement of Undisputed Facts by saying the facts stated are either incomplete or an improper characterization.  For example, Capitol Specialty states in ¶ 9 that defendants moved to reinstate the class claim and certify the question for interlocutory appeal.  Defendants dispute this statement as incomplete because on February 21, 2007, defendants also filed a Petition for Permission to Appeal pursuant to Rule 23(f) in the United States Court of Appeals for the District of Columbia.  (Defs.' Facts ¶ 9.)  The Court does not believe this properly constitutes a dispute or incomplete fact and accordingly cites to Capitol Specialty's facts in instances such as this.

**B.      Defendants' Insurance Policies with Capitol Specialty**

Capitol Specialty first issued defendants a liability insurance policy for the policy period December 10, 2004 to December 10, 2005. (Pl.'s Facts ¶ 13; Defs.' Opp'n at 7.) This policy was not renewed by defendants, and for the next two years, defendants were insured by a different company. (*Id.*) As of December 10, 2007, Capitol Specialty became defendants' legal malpractice insurer again, issuing the Policy that underlies this dispute. (*Id.* at ¶ 21.) The Policy has been continuously renewed by defendants. (Compl. ¶ 19.) It includes a $7 million per claim limit, a $7 million aggregate limit of liability, inclusive of claim expenses, and a $100,000 retention for each and every claim made during the policy period. (Compl. ¶ 20 and, Ex. A.)

Section § I.A. of the Policy, as amended by Endorsement No. 2, sets forth the conditions precedent to coverage:

> [I]t is a condition of precedent to coverage under this policy that the act or omission occurred:
>
> 1.  during the Policy Period; or
>
> 2.  on or after December 10, 2004, provided that all of the following conditions are met:
>
>     (a)   the Insured did not notify any prior insurer of such act or omission or Related Act or Omission; and
>
>     (b)   *prior to the inception date of the first policy* issued by the Company *if* continuously renewed, no Insured had any basis (1) to believe that any Insured had breached a professional duty; or (2) to foresee that any such act or omission or Related Act or Omission might reasonably be expected to be the basis of a Claim against any Insured; and
>
>     (c)   there is no policy that provides insurance to the Insured for such liability or Claim.

(Pl.'s Facts ¶ 23; Compl., Ex. A) (emphasis added).

Prior to the Policy's issuance, defendants signed a Renewal Application for Lawyers Professional Liability Insurance ("Application") and Warranty Statement.[3]  (Compl., Exs. I and J.)

In its Application, signed November 1, 2007, defendants denied awareness of "*any* circumstances, allegations, tolling agreements or contentions as to any incident which *may* result in a claim being made against the Applicant or any of its past or present Owners, Partners, Shareholders, Corporate Officers, Associates, Employed Lawyers, Contract Lawyers or Employees or predecessors in business." (Compl., Ex. I.) (emphasis added).  The Warranty Statement, signed December 6, 2007, provided:

> [A]fter diligent inquiry of all attorneys proposed for this insurance, [Applicant] warrants that as of December 6, 2007, all claims or suits, as well as facts, incidents, circumstances, acts, errors or omissions that *could* give rise to a claim have been reported.
>
> It is also warranted that after diligent inquiry of all attorneys proposed for this insurance, that as of December 6, 2007 the Applicant is not aware of *any* claims or suits, or any facts, incidents, circumstances, acts, errors or omissions that *could* give rise to a claim against any attorney of the firm, the firm or its predecessors.
>
> . . .
>
> These warranties are *material* to the acceptance of coverage by Darwin Professional Underwriters, Inc. and the insurers for whom it acts…Further, Sanford Wittels & Heisler, LLP acknowledges that *no coverage* will be available under insurance placed by Darwin Professional Underwriters, Inc. for any claim, suit, incident, or other circumstance which should have been disclosed.

(Pl.'s Facts ¶ 18; Compl., Ex. J) (emphasis added).

---

[3] Defendants dispute plaintiff's characterization that the Application and Warranty were reviewed or considered by Capitol Specialty prior to the issuance of the Policy, noting that the Application was for "Certain Underwriters' at Lloyd's" and Hub International, and the. Warranty was sent to Strategic Insurance Agency and (Defs.' Statement of Facts ["Defs.' Facts"] ¶¶ 12-20.)  Capitol Specialty counters that Endorsement No. 3 to the Policy clearly states that the Application would be "treated as the Application for this Policy."  (Pl.'s Reply in Support of Summ. J. ["Pl.'s Reply"] at 9, n.7; Compl., Ex. A.)  Nonetheless, as is clear from the discussion herein, this purported dispute is not relevant to the resolution of this case.

### C.       The Malpractice Action

On March 20, 2008, defendants received a letter from an attorney, Fred Goldberg

("Goldberg Letter") on behalf of the Clients.  (Pl.'s Mem. for Summ. J. ["Pl.'s Mem."], Ex. 7D;

Defs.' Facts ¶ 28.)  In this letter, Goldberg stated:

> As you are aware, as a result of your failure to meet the Local Rule requirement
> with regard to class certification, they and the class have been economically
> harmed.  There are also issues which have been brought to my attention with
> regard to failure to communicate a bona fide settlement offer from the defendant.

(*Id.*)

Defendants provided Capitol Specialty with a copy of this letter on April 4, 2008, which

Capitol Specialty acknowledged by letter dated April 10, 2008.  (Pl.'s Facts ¶ 28.)  On May 7,

2008, Capitol Specialty sent defendants a letter stating that it would be treating this matter as a

"notice of circumstances which may give rise to a claim."  (Pl.'s Mem., Ex. 7E.)  That letter also

included the following reservation of rights:

> [Capitol Specialty's] position with respect to these matters is based on the
> information provided to date, and is subject to further evaluation as additional
> information becomes available. [Capitol Specialty] respectfully reserves all of its
> rights and defenses under the Policy and available at law, including the right to
> assert additional Policy terms and provisions which may become applicable as
> new information is learned.

(*Id.*)

On January 21, 2010, Clients filed a legal malpractice action against defendants in the

Superior Court for the District of Columbia.  (Pl.'s Facts ¶ 30; Complaint, *Howard. v. Sanford*

*Wittels & Heisler, LLP*, No. 2010-ca-00311-M (D.C. Super. Ct. January 21, 2010) ["Malpractice

Action"]).  On February 19, 2010, defendants notified Capitol Specialty of the Malpractice

Action.  (Pl.'s Mem., Ex. 7F.)  By letter dated March 23, 2010, Capitol Specialty acknowledged

receipt of the notification and advised defendants that "[a]s set forth below, coverage is available

to Sanford Wittels & Heisler LLP for this matter," and suggested that "the Policy be reviewed together with this letter" because this letter "does not modify any of the terms and conditions of the Policy." (Pl.'s Mem., Ex. 7G.)  The letter also quoted from Section § I.A. of the Policy, including the conditions precedent to coverage and reiterated Capitol Specialty's reservation of rights.  (*Id.*)

On April 8, 2010, defendants retained Michelle Roberts of Akin Gump Strauss Hauer & Feld ("Akin Gump") to represent it in the Malpractice Action, paying an initial $10,000 retainer as well as later additional fees of $6,714.  (Defs.' Facts ¶ 32(c); Sanford Decl. ¶ 15.)  By letter dated May 11, 2010, Capitol Specialty informed defendants that under the Policy it had a "right and duty to defend any Claim seeking Damages that are covered by this policy."  (Pl.'s Mem., Ex. 7H.)  Capitol Specialty further informed defendants that it did not consent to defendants' choice of counsel, and that it had retained Eccleston and Wolf, P.C. to defend defendants in the Malpractice Action.  (*Id.*)   At the same time, Capitol Specialty noted that if defendants do not want Capitol Specialty to defend, "we will disengage counsel and close this matter."  (*Id.*)  The same reservation of rights was reiterated in this letter.  (*Id.*)  According to defendants, they have to date recouped only $2,134.76 of the $16,714 they paid to Akin Gump.  (Defs.' Facts at ¶ 32 (d).)

On November 8, 2010, Capitol Specialty advised defendants that it had concluded "tentatively" that the Policy did not cover the Malpractice Action:

> Since learning of the potential claim and then the actual claim, [Capitol Specialty] has been handling this matter under a reservation of rights.
>
> . . .
>
> Based on its review of the court records regarding the Firm's handling of the Howard plaintiffs' underlying lawsuit, [Capitol Specialty] has tentatively concluded that no coverage is available for the Claim for the reasons explained

below.  However, before making a final decision, [Capitol Specialty] will afford
the Insured an opportunity to provide an explanation and any supporting
documents and authority if they disagree with [Capitol Specialty's] tentative
conclusion.  [Capitol Specialty] also will continue to provide a defense, subject to
a full and complete reservation of rights, including the right to withdraw from the
defense and the right to seek repayment of all amounts paid by [Capitol
Specialty].

(Pl.'s Mem., Ex. 9.)

Since then, Capitol Specialty's law firm has continued representing defendants.  Capitol

Specialty rejected a settlement offer made by the Clients in a letter dated March 2, 2011.[4]

## II.   PROCEDURAL HISTORY

On December 8, 2010, Capitol Specialty commenced this suit seeking a declaratory

judgment that it need not provide coverage for the Malpractice Action.[5]  Capitol Specialty's

complaint alleges that defendants were aware that their failure to meet a class certification

deadline in the class action suit could result in a claim.  (Pl.'s Mem. at 2.)  But because

defendants did not notify Capitol Specialty of this incident prior to the inception date of the

Policy, Capitol Specialty alleges that they are barred from seeking coverage under the condition

precedent provision.  (*Id.*)  Capitol Specialty further alleges defendants are barred from coverage

because they did not disclose this potential claim on their Warranty Statement and Application.

---

[4] Defendants allege that Capitol Specialty refused to negotiate a settlement offer made jointly to
defendants and the law firm of Grant E. Morris that specifically contemplated that defendants'
insurer would fund no more than the $7 million limit of the Policy and that Morris' insurer
would fund the remaining $1 million.  (Defs.' Opp'n at 14.)  Capitol Specialty argues that it has
no duty to defend or settle a claim if there is no coverage for the claim under the Policy.  (Pl.'s
Reply at 12.)  *See Am. Nat'l Red Cross v. Traveler's Indem. Co. of R.I.*, 896 F. Supp. 8, 11
(D.D.C. 1995) ("An insured's claim of bad faith breach of contract against its insurer fails if
coverage for the underlying claim does not exist.")  The Court agrees.

[5] Defendants filed a motion to transfer to the District Court for the Southern District of New
York pursuant to 28 U.S.C. § 1404(a), which this Court denied.  (Dkt. No. 4.)

(*Id.*)  Capitol Specialty also seeks recovery of claim expenses expended in defense of  the underlying malpractice action.

Defendants filed a counterclaim for a declaratory judgment that Capitol Specialty is obligated to provide coverage on the Malpractice Action.  Defendants also filed counterclaims for breach of contract with respect to the duty to defend and indemnify, duty to negotiate a settlement within the Policy limits, bad faith denial of coverage, and bad faith refusal to settle or negotiate a settlement.  (Defs.' Answer & Counterclaim at 50-74 ["Defs.' Answer"].)

On February 18, 2011, Capitol Specialty filed the instant motion for summary judgment. Defendants oppose summary judgment and demand a jury trial.

## ANALYSIS

Capitol Specialty argues that it is entitled to summary judgment on two independent grounds  (1) there is no coverage for the Malpractice Action because defendants failed to satisfy all conditions precedent and; (2) there is no coverage for the Malpractice Action because defendants provided a false warranty to Capitol Specialty.[6,7]

---

[6] Citing D.C. Code § 31-4314, Capitol Specialty also argues it could abrogate the policy based on defendants' false representation in the Warranty and Application, even if this misrepresentation was unintentional.  D.C. Code § 31-4314 provides that a false statement on an insurance application does not bar the right to recovery unless "such false statement was made with intent to deceive or unless it materially affect[s] either the acceptance of the risk or the hazard assumed by the company."  D.C. Code § 31-4314 (2011); *See Ross v. Cont'l Cas. Co.*, 420 B.R. 43 (D.C. 2009) (holding this statute did not bar insurer's denial of coverage for legal malpractice claim because the insured, prior to inception date of policy, had reason to believe that an act or omission might reasonably be expected to be the basis of a claim); *Burlington Ins. Co., v. Okie Dokie Inc.*, 398 F. Supp. 2d 147, 157 (D.D.C. 2005) (holding an insurer has a right to rely on statements made in an insurance application).  Moreover, even if defendants' misrepresentation had been unintentional, under District of Columbia law, Capitol Specialty could still abrogate the policy if the misrepresentation materially affected the hazard assumed by the insurer.  *See also Blair v. Inter-Ocean Ins. Co.*, 589 F.2d 730, 732 (D.C. Cir. 1978).

[7] Defendants contest Capitol Specialty's reliance on the Warranty and Application in declining coverage, noting that an insurer waives its rights to assert other defenses when it does fails to do

Defendants argue that all conditions precedent and other requirements for coverage have been met, waived or are inapplicable.  Defendants also contend that Capitol Specialty is estopped from denying coverage because defendants relied on Capitol Specialty's defense to their detriment, and as a result, this caused prejudice to defendants.

## I.    SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)).  Thus, a moving party is entitled to summary judgment "against 'a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Waterhouse v. District of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

As the non-moving parties, defendants are "entitled to the benefit of all reasonable inferences from the evidence," *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011), and the evidence "is to be viewed in the light most favorable to" them.  *Talavera*, 638 F.3d at 310 (internal citations omitted).  The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.

---

so in the original assertion.  *See Continental Cas. Co. v. Hartford Fire Ins. Co.*, 116 F.3d 932, 939 n.8 (D.C. Cir. 1997) (internal citations omitted).  The Court need not reach the issue of waiver since, as explained herein, the failure to satisfy the condition precedent is determinative of the outcome in this case.

*Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e).  If the non-movant fails to point to "affirmative evidence" showing a genuine issue for trial, *Anderson*, 477 U.S. at 257, or "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment can be granted.  *Id.* at 249–50 (internal citations omitted).

## II.    CHOICE OF LAW

Under District of Columbia law, the Court must first determine if there is a conflict between the laws of the relevant jurisdictions.  *Eli Lilly & Co. v. Home Ins. Co.*, 764 F.2d 876, 882 (D.C. Cir. 1985) (citing *Fowler v. A & A Co.,* 262 A.2d 344, 348 (D.C. 1970)); *Duncan v. G.E.W., Inc.,* 526 A.2d 1358, 1363 (D.C. 1987).  Only if such a conflict exists must the court then determine, pursuant to District of Columbia choice of law rules, which jurisdiction has the "more substantial interest" in the resolution of the issues.  *See Nationwide Mut. Ins. Co. v. Richardson*, 270 F.3d 948, 953 (D.C. Cir. 2001); *Eli Lilly & Co.*, 764 F.2d at 882; *Greycoat Hanover F St. Ltd. P'ship v. Liberty Mut. Ins. Co.*, 657 A.2d 764, 767–68 (D.C. 1995).

Here, defendants cite *Liberty Mutual Insurance Co. v. Travelers Indemnity Co.* to support the application of  New York law because the Policy was negotiated and delivered to defendants at their New York address.  *Liberty Mut. Ins. Co.*, 78 F.3d 639, 642 (D.C. Cir. 1996) ("[I]nsurance contracts are governed by the substantive law of the state in which the policy is delivered.")  Subsequent decisions have called this rule into question.   For instance, in *Young Women's Christian Association of the National Capital Area v. Allstate Insurance Co.*, the D.C. Circuit distinguished *Liberty Mutual* and suggested conflict of laws analysis should be based on the jurisdiction with the more substantial interest in the litigation:

> It is not altogether clear that *Liberty Mutual* correctly characterized the District of Columbia's choice of law rules. This court's decision in *Nationwide Mutual Insurance Co.,* applying the District of Columbia Court of Appeals decision in *Greycoat Hanover* suggests that the District of Columbia applies the law of the

jurisdiction with the more substantial interest in the litigation, in considering what law to apply to insurance policies. *Nationwide Mut. Ins. Co. v. Richardson*, 270 F.3d 948, 953 (D.C. Cir. 2001); *cf. Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 148 (D.C. Cir. 1997). *Liberty Mutual* addressed neither *Greycoat Hanover* nor the more substantial interest test, relying instead on D.C. Court of Appeals decisions involving life insurance policies rather than liability policies. *Liberty Mut.*, 78 F.3d at 642 (citing *Levin v. John Hancock Mut. Life Ins. Co.*, 41 A.2d 841 (D.C. 1945), and *Raley v. Life & Cas. Ins. Co. of Tenn.*, 117 A.2d 110 (D.C. 1955)). Those District of Columbia cases are specific, however, to life insurance policies and rely on Supreme Court cases holding that the place of delivery of life insurance policies determines what state law should apply.

*Young Women's Christian Ass'n of the Nat'l Capital Area, Inc.*, 275 F.3d 1145, 1150 n.1 (D.C. Cir. 2002).

Based on this analysis, the Court will apply the laws of the District of Columbia as this is the jurisdiction with the more substantial interest in the litigation. Notwithstanding a substantial interest analysis, however, the law of the District of Columbia would also apply because both parties assert that there is no conflict between the laws of New York and District of Columbia. (Defs.' Opp'n at 16, n.9; Pl.'s Reply at 2, n.3.) *Sloan v. Urban Tiles Ins. Co.*, 689 F. Supp. 2d 94, 105 (D.D.C. 2010) ("Where no true conflict exists, the court applies the law of the District of Columbia by default.")

## III.   CONDITION PRECEDENT PROVISION PRECLUDES COVERAGE

"Where the policy expressly makes compliance with its terms a condition precedent to liability on the part of the insurer, failure to comply with the notice provision will release the insurer of liability on the policy." *Lee v. Travelers Ins. Co.*, 184 A.2d 636, 638 (D.C. 1962). Capitol Specialty argues that the Policy does not cover the Malpractice Action because defendants cannot satisfy an unambiguous condition precedent to coverage for acts or omissions that occurred prior to the Policy Period. Specifically, Capitol Specialty alleges that defendants had notice about a potential claim as early March 2006 when the Department of Commerce first

moved to strike the class claims in the Discrimination Action on the grounds that defendants had missed a filing deadline.  This notice was reinforced in February 2007, when Judge Kennedy dismissed the class claim based on defendants' missed deadline, and again in September 2007, when the Court soundly rejected defendant's arguments for reconsideration.  (*Id.*)  As all of this occurred prior to the Policy Period, Capitol Specialty asserts that defendants cannot satisfy the condition that:

> prior to the inception date of the first policy…no insured had any basis (1) to believe that any Insured had breached a professional duty; or (2) to foresee that any such act or omission or Related Act or Omission might reasonably be expected  that any Insured had breached a professional duty or that any act or omission or Related Act or Omission might reasonably be expected to be the basis of a Claim against any Insured.

(Compl., Ex. A.)

Defendants claim that the condition precedent language of the Policy is ambiguous because it is not clear if the clause "prior to the inception of the first Policy" refers to the 2007-2008 or the 2004-2005 Policy.  They further claim that the Malpractice Action was not foreseeable, and therefore, they had no prior knowledge of the claim before the issuance of the Policy.

## A.     Subsection 2(b) Is Not Ambiguous

"An insurance policy is a contract between the insured and the insurer, and in construing it [a court] must first look to the language of the contract." *Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 968 (D.C. 1999).  Exclusion provisions "must be enforced even if the insured did not foresee how the exclusion operated," *Ross*, 420 B.R. at 48, otherwise courts will find themselves in the undesirable position of "rewrit[ing] insurance policies and reallocat[ing] assignment of risks between insurer and insured." *Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1127-28 (D.C. 2001).  Under District of Columbia law, when the language of

13

insurance contracts is "clear and unambiguous, they will be enforced by the courts as written, so long as they do not 'violate a statute or public policy.'" *Hartford Accident & Indem. Co. v. Pro-Football, Inc.*, 127 F.3d 1111, 1114 (D.C. Cir. 1997) (quoting *Smalls v. State Farm Mut. Auto. Ins. Co.*, 678 A.2d 32, 35 (D.C. 1996)).  "[A]mbiguities in insurance contracts are resolved favorably to the insured," *Columbia Cas. Co. v. Columbia  Hosp.*, 633 F. Supp. 697, 700 (D.D.C. 1986) (quoting *Continental Cas. Co. v. Beelar*, 405 F.2d 377, 378 (D.C. Cir. 1968), but an insurance contract "'is not ambiguous merely because the parties do not agree on the interpretation of the contract provision in question.'"  *Travelers Indem. Co. of Illinois v. United Food & Commercial Workers Int'l Union*, 770 A.2d 978, 986 (D.C. 2001) (quoting *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983).  Rather, a contract "is ambiguous only if 'reasonable people may fairly and honestly differ in their construction of the terms because the terms are susceptible of more than one meaning.'"  *National R.R. Passenger Corp. v. Lexington Ins. Co.*, 445 F. Supp. 2d 37, 41 (D.D.C. 2006) (quoting *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 2003 WL 24045159, at *5 (D.D.C. May 20, 2003)), *aff'd*, 249 F. App'x 832 (D.C. Cir. 2007).

In the instant case, defendants argue that the term "first policy" in subsection 2(b) is ambiguous because it is unclear if the phrase "prior to the inception date of the first policy issued by [Capitol Insurance] if continuously renewed" refers to the 2004-2005 policy or the 2007-2008 policy.  (Defs.' Opp'n at 24-25; Compl., Ex. A.)  Faced with that ambiguity, defendants argue that "first policy" should be favorably construed as referring to the 2004-2005 Policy.  *See Columbia Cas. Co*, 633 F. Supp. at 700 (holding that ambiguities in insurance contracts should be favorably construed to the insured).  Defendants then argue that because the "first policy" issued was the  2004-2005, and it was not "continuously renewed," neither the 2004-2005 policy nor the 2007-2008 policy fall within the terms of subsection 2(b) because neither is the "first

14

policy issued by [Capitol Specialty] if continuously renewed."   (Defs.' Opp'n at 25.)  Thus,

under defendants' proposed interpretation, they would be covered for an "act or omission" that

occurred "on or after December 10, 2004" and before December 10, 2007, as long as conditions

2(a) and 2(c) were met.

Capitol Specialty argues that the Policy is not ambiguous because "first policy" is not

susceptible to more than one reasonable interpretation.  *Chase*, 780 A.2d at 1127-28 ("Policy

language is not genuinely ambiguous unless 'it is susceptible of more than one *reasonable*

interpretation.') (quoting *American Bldg. Maint. Co. v. L'Enfant Plaza Prop., Inc.*, 655 A.2d

858, 861 (D.C. 1995)).  As defendants acknowledge, the 2004-2005 policy was never renewed.

Hence, it would be nonsensical and self-defeating for the provision to refer to a past policy that

both parties acknowledge was never renewed.  Additionally, defendants' reading of this clause

would translate into Capitol Specialty assuming complete liability for the timeframe between

December 10, 2005 and December 10, 2007, even though Capitol Specialty was not the insurer

during that time.  Capitol Specialty contends that this is facially unreasonable and would

undermine the principle underlying prior knowledge provisions which are designed to protect

insurance companies from insuring entities that do not disclose known errors or issues.  (Pl.'s

Reply at 4.)  " 'The insurance company is entitled to protect itself against the professional who,

recognizing his past error or omission, rushes to purchase a 'claims-made' policy before the error

is discovered and a claim is asserted against him.'"  *Ross*, 420 B.R. at 54 (quoting *Zuckerman v.

Nat'l Union Fire Ins. Co.*, 495 A.2d 395, 403-404 n.3 (N.J. 1985)).  The Court agrees.

The fact that defendants have come up with an alternative reading of the Policy language

is not enough to establish that "reasonable people . . . may fairly and honestly differ in their

construction of the terms," *Nat'l R.R. Passenger Corp.*, 445 F. Supp. 2d at 41, where the

defendants' proposed interpretation would strip the Policy of any limitations on coverage for acts between December 10, 2005 and December 10, 2007.   Thus, defendants' interpretation of the "first policy" clause is simply not a reasonable reading of that clause.  If, however, the "first policy" language refers to the 2007-2008 Policy, as Capitol Specialty argues, the Policy covers acts or omissions that occurred on or after December 10, 2004, and prior to December 10, 2007, *as long as* Sanford had no reasonable basis to foresee a claim against them prior to December 10, 2007.  This interpretation also renders actual meaning to the "if continuously renewed" language, whereas under defendants' interpretation it would have no meaning.  Because Capitol Specialty offers the only reasonable interpretation of the Policy language, the Policy is unambiguous. Therefore, the Court concludes that "first policy" unambiguously refers to the 2007-2008 policy period.

### B.      Defendant Cannot Meet the Condition Precedent to Coverage in Subsection 2(b)

Even if the Policy is not ambiguous, defendants argue that they have satisfied the condition precedent in subsection 2(b) because they had no reasonable expectation that the Client would bring a malpractice claim.  (Defs.' Opp'n at 8-9.)  Defendants base their argument on the Clients' prior course of conduct and discussions before the Clients' termination of defendants as their counsel.  (*Id.*)  Plaintiff counters that defendants had prior knowledge of a breach of professional duty, as well as a reasonable expectation on what transpired in the Discrimination Action.  The Court agrees.

As Capitol Specialty points out, the Policy expressly stated a second precedent to coverage:  that no Insured had a "basis…to believe that any Insured had breached a professional duty."  Missing a filing deadline that results in the dismissal of the class action claim could easily qualify as a breach of a professional duty.  *See In re Belmar*, 319 B.R. 748, 755 (Bankr. D.D.C.

2004) ("[T]here is no genuine issue that the defendants breached that standard of care by failing to timely file an opposition or seek an extension of time in which to file such an opposition."); *Cameron*, 649 A.2d at 294 ("[C]ounsel has a duty to pay attention to filing deadlines and not to let one go by in any pending case without doing whatever needs to be done.").

Defendants argue that the Malpractice Action was not reasonably foreseeable because they had no reason to believe that the Clients would bring a malpractice suit.  (*Id.*)  Specifically, defendants point to the fact that the Clients expressed their understanding that the Court's dismissal of the class claims could be appealed at a later time, and the Clients further stated their intent to proceed with the individual claims and appeal the Court's decision to strike the class claims at the end of litigation, to support their position.  (Sanford Declaration ¶ 8.)  But as Capitol Specialty points out that the correct standard is the objective, reasonable attorney one, not whether the lawyer in fact had a subjective belief that a malpractice action was probable.  *See Ross*, 420 B.R. at 49 ("whether the [insured] could have reasonably foreseen a malpractice claim is an objective test that can be determined as a matter of law."); *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 237 (3d. Cir. 2006) ("[W]e conclude that this part of the exclusion gives rise to an objective test: whether a reasonable professional in the insured's position might expect a claim or suit to result.").  Moreover, "the question whether the insured has acted reasonably becomes a question of law only when reasonable persons can draw but one inference . . . ."  *Travelers*, 770 A.2d at 991 (citing *Starks v. North East Ins. Co.*, 408 A.2d 980, 982 (D.C. 1979)).  Here, the dismissal of a lawsuit because of attorney error would clearly put a lawyer on notice of the possibility of a malpractice claim.  *See Ross*, 420 B.R. at 55 (holding a law firm's failure to file a timely answer resulting in a default judgment could reasonably be expected to form the basis for a malpractice claim); *Cameron v. Washington Metro. Area Transit*

17

*Auth.*, 649 A.2d 291, 294 (D.C. 1994) (finding an attorney "has a duty to pay attention to filing

deadlines. . . ."); *O'Neil v. Bergan*, 452 A.2d 337, 341-43 (D.C. 1982) (holding that "allowing

the statute of limitations to run on the client's claim" is an example of obvious malpractice that

does not require expert testimony to establish a standard of care).

      As such, the Court concludes that the acts or omissions underlying the Malpractice

Action establish as a matter of law that defendants had a basis to "believe that any Insured had

breached a professional duty," or to "foresee that any such act or omission . . . might reasonably

be expected to be the basis of a Claim against the Insured." (Compl., Ex. A.)  Therefore,

defendants cannot satisfy the subsection 2(b) condition precedent to coverage and there is no

coverage for the Malpractice Action under the Policy.

## IV.    ESTOPPEL

      Having concluded that the Policy does not cover the Malpractice Action, the question

remains whether, as defendants argue, Capitol Specialty is estopped from denying coverage

because it first disclaimed coverage in November 2010.  "Estoppel generally results when an

insurance company assumes the defense of an action [and] to prevail on this basis, the insured is

required, in some jurisdictions, to show prejudice and in other jurisdictions prejudice will be

presumed." *Athridge v. Aetna Cas. and Sur. Co.*, 604 F.3d 625, 630 (D.C. Cir. 2010) (quoting

*Diamond v. Utica Mut. Ins.*, 476 A.2d 648, 654 (D.C. 1984).  Under District of Columbia law,

prejudice is required for estoppel.  *Athridge v. Aetna Cas. and Sur. Co.*, 2006 WL 2844690, at *2

(D.D.C September 29, 2006) ("[W]ithout prejudice . . . [a] claim for estoppel fails as a matter of

law."), *aff'd*, 604 F.3d 625 (D.C. Cir. 2010).

      District of Columbia case law suggests prejudice may be shown in one of two ways: (1)

by a rebuttable presumption of prejudice when an insured assumes complete control over the

insured's defense if there is no reservation of rights or (2) by evidence of actual prejudice.

*Athridge*, 604 F.3d at 629-630.  Because the Court concludes Capitol Specialty issued an

adequate reservation of rights to defendants prior to assuming control of their defense,[8] the Court

will turn to a determination of actual prejudice.

Actual prejudice may be shown if the insurer's participation in the defense harmed or

hindered the insured by undermining their ability to defend themselves.  *Id*; s*ee also In re*

---

[8] An insurer has a duty to defend a lawsuit brought against its insured but that does not necessarily estop the insurer from declining coverage at some reasonable point if the insurer reserves their rights to do so.  *See Athridge v. Aetna Cas. and Sur. Co.*, 510 F. Supp. 2d 1 (D.D.C. 2007), *aff'd*, 604 F.3d 625 (D.C. Cir. 2010); *Diamond*, 476 A.2d at 648.  But an insurer who defends an insured without an appropriate disclaimer and reservation of rights is barred from disclaiming coverage.  *Continental Cas. Co. v. Hartford Fire Insurance Co.*, 116 F.3d 932, 939 (D.C. Cir. 1997) (citing *National Union Fire Ins. Co. v. Aetna Cas. & Sur. Co.*, 384 F.2d 316, 318 (D.C. Cir. 1967)).  When an insurer assumes complete control of the insured's defense without a reservation of rights, prejudice is assumed as a matter of law.  *Walker v. American Ice Co.*, 254 F. Supp. 736, 742 (D.D.C. 1966).  Generally, reservation of rights language should indicate specific coverage defenses or else the insurer may be barred from raising them later. *Central Armature Works, Inc. v. American Motorists Ins. Co.*, 520 F. Supp. 283, 288 n.4 (D.D.C. 1980); *New Appleman on Insurance Law* § 16-03(3)(d)(i) (2010).  Recognizing that identification of coverage issues requires time, however, this Court has held that a reservation of rights is sufficient as long as the insurer conducts an investigation and analysis with "reasonable diligence and promptly notifies the insured" once the process is complete.  *Central Armature Works, Inc.*, 520 F. Supp. at 288 n.4; s*ee also* Allan D. Windt, *Insurance Claims and Disputes* § 2:14 (5th ed. 2011) (When an insurer assumes an insured's defense, it can reserve all of its rights through a reservation of rights letter if it has not had a reasonable opportunity to analyze the applicability of coverage).  In *Diamond*, 476 A.2d at 654-56, the court concluded the nine-month period between receiving notice of a malpractice claim and disclaiming coverage was not unreasonable.  Nor did the court find that the six-month period between sending a reservation of rights letter and disclaiming coverage as unreasonable.  Here, as in *Diamond*, nine months elapsed between Capitol Specialty receiving the notice of the Malpractice Action in February 2010 and disclaiming coverage in November 2010.  The Court concludes this is not an unreasonable time frame, nor is the eight-month time period between issuing the reservation of rights and disclaiming coverage.  Although defendants attempt to shift the date of notice to April 2008 by arguing that they first gave notice through the Goldberg letter, this is not persuasive as even defendants admit that because the clients "waited almost two years before actually filing a lawsuit against [defendants]…[it] further reinforce[ed] [their] belief that losing [the] motion to reinstate the class claims was not reasonably likely to give rise to a claim." (Defs.' Opp'n at 11.)  Thus, the Court is not persuaded that the time between February and November was of a sufficient length of time to be prejudicial to defendants.

*Himmelfarb's Estate* 345 A.2d 477, 483 (D.C. 1975) ("An essential element of estoppel is prejudice caused by detrimental reliance.").  In *Diamond*, the court did not find evidence of actual prejudice because there was no showing that pre-trial preparation was prejudiced, necessary witnesses had become unavailable, settlement negotiations had been hindered or that the insured had been lulled into reliance on the insurer.  *Diamond*, 476 A.2d at 658.

Here, defendants allege that Capitol Specialty is estopped from denying coverage because Capitol Specialty: (1) advised defendants that coverage is available for this claim; (2) undertook their defense in the Malpractice Action; (3) waited an unreasonably long time between first receiving notice of the claim and disclaiming coverage; and (4) prejudiced their defense in the Malpractice Action.[9]  (Defs.' Opp'n at 19-20.)  The first three points are not evidence of prejudice because Capitol Specialty provided defense to defendants subject to an appropriate reservation of rights.  *See supra* note 8.   The fourth point asserts prejudice, but defendants fail to demonstrate any evidence of actual prejudice in the handling of their case beyond vague and conclusory allegations of such prejudice.  Defendants allege that they incurred legal fees and costs, and were deprived of their preferred counsel.  However, they do not allege or point to any evidence that the representation provided by Capitol Specialty hindered the defense of their claim or that the counsel was inadequate or ineffective.

Defendants first argue that because of their reliance on Capitol Specialty's defense, they incurred legal fees and costs in excess of $87,000.  (Defs.' Opp'n at 13.)  But the Policy clearly

---

[9] Defendants also argue that Capitol Specialty is barred from disclaiming coverage because they indicated that "coverage is available to Sanford Wittels  Heisler LLP for this matter"  in the March 23, 2010 letter acknowledging notice of the suit against defendants. (Defs.' Opp'n at 11; Pl.'s Mem., Ex. 7G.)  But in that letter, Capitol Specialty specifically emphasized that any action taken in support of defendants with regards to the Malpractice Action would also be subject to a reservation of rights

states that there is a standard $100,000 deductible in the Policy per each claim. (Compl., Ex. A.) Moreover, defendants do not show how this monetary loss undermined their ability to defend themselves. Second, defendants allege prejudice because they had to terminate their preferred counsel of Michelle Roberts from Akin Gump and also incurred outstanding legal fees. (Defs.' Facts at 9.) But according to the Policy, Capitol Specialty "has the right and duty to defend any claim seeking damages that are covered by the policy made against the Insured even if any of the allegations of the Claim are groundless, false or fraudulent." (Pl.'s Compl., Ex. A at § I.B.) As such, defendants took a miscalculated risk in preemptively and independently hiring counsel without first seeking permission from Capitol Specialty. It is also of note that Michelle Roberts was terminated in May 2010 only one month after defendants signed the contract with Akin Gump and only six months before Capitol Specialty disclaimed coverage.

More tellingly, defendants offer no criticism of Eccleston & Wolf nor do they allege any facts of poor representation or malpractice. On the contrary, defendants admit that the class claims in the Malpractice Action were dismissed by the District of Columbia Superior Court. (Defs.' Opp'n at 10, n.7.) And similar to the insured party in *Diamond*, defendants did not object to the conditional defense nor did they question the reservation of rights, even while remaining in contact with Capitol Specialty.

Accordingly, defendants have not demonstrated actual prejudice. See *Athridge v. Aetna*, 510 F. Supp. 2d 1, 8 (D.D.C. 2007) ("Plaintiffs' contentions of ways in which prejudice *could have been created* cannot overcome their inability to show that any prejudice *was created*. . . ."). As such, the Court concludes that defendants cannot, as a matter of law, invoke the defense of estoppel.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted.  A separate order will accompany this Memorandum Opinion.[10]


_____/s/_____

ELLEN SEGAL HUVELLE
United States District Judge

Date:   June 27, 2011

---

[10] As the Court noted above (*see supra* note 4), defendants' counterclaims fall out because there is no underlying coverage.  Moreover, District of Columbia law does not recognize a cause of action for bad faith breach of an insurance contract.  See *Fireman's Fund Ins. Co. v. CTIA-The Wireless Ass'n*, 480 F. Supp. 2d 7, 9 ("The Court finds…that the District of Columbia would not recognize a tort cause of action for bad faith breach of an insurance contract.")