IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAPITOL SPECIALTY<br>INSURANCE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>SANFORD WITTELS & HEISLER, LLP<br>AND DAVID W. SANFORD,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 1:10-cv-2079-ESH

DEFENDANTS' SUR-REPLY IN FURTHER OPPOSITION TO
CAPITOL SPECIALTY INSURANCE CORPORATION'S
<u>MOTION FOR SUMMARY JUDGMENT</u>

Defendants Sanford Wittels & Heisler, LLP ("SWH") and David W. Sanford

("Sanford" and, together with SWH, the "Defendants") respectfully submit this Sur-Reply in

further opposition to Capitol Specialty Insurance Corporation's ("CSIC" or the "Plaintiff")

Motion for Summary Judgment (the "Motion").[1]

<u>ARGUMENT</u>

I.    SECTION I.A.(2)(B) OF THE POLICY IS AMBIGUOUS.

CSIC's lengthy explanation regarding its interpretation of Section I.A.(2)(b) of

the Policy belies CSIC's contention that the provision is clear on its face, and the case upon

which CSIC relies to support this contention is inapposite.  CSIC asserts that the court in *Ross v.*

---

[1]    Unless otherwise defined herein, all capitalized terms herein have the meanings ascribed
to them in Defendants' Memorandum of Points and Authorities in Opposition to
Plaintiff's Motion for Summary Judgment (the "Opposition"), dated March 25, 2011.
Dkt. No. 9.

*Continental Casualty Co.*, 420 B.R. 43 (D.D.C. 2009), considered the question of whether the language Section I.A.(2)(b) of the Policy is ambiguous and found that it is not.  Reply at 2.  This is not so.  The court in *Ross* did not construe the language of Section I.A.(2)(b) of the Policy that is at issue in this case, namely, "the inception date of the first policy issued by the Company if continuously renewed."  In fact, when quoting the policy at issue in *Ross*, the court made clear that it was specifically *excluding* this language from its analysis:

> Under the policy, Continental agreed to 'pay on behalf of the Insured all sums in excess of the deductable that the Insured shall become legally obligated to pay … provided that … *prior to … the inception date of the first policy issued by the Company* …, if continuously renewed … *[,] no insured had a basis to believe that any such act or omission, or related act or omission, might reasonably be expected to be the basis of a claim[.]*'

*Ross*, 420 B.R. at 45-46 (emphasis in original).  In short, the insured in *Ross* did not raise the issue of whether the phrase "the first policy issued … if continuously renewed" is ambiguous, and the court did not address it.

As stated in Defendants' opening brief, because the language in Section I.A.(2)(b) of the Policy is reasonably susceptible to more than one interpretation it is ambiguous.  Nothing in *Ross* or any other case cited by Plaintiff refutes this position.

## II. CSIC ADMITTED COVERAGE AND, THUS, COVERAGE IS NOT BEING CREATED THROUGH WAIVER AND/OR ESTOPPEL.

CSIC has agreed that the Malpractice Claims were covered by the Policy.  *See* Ptf. Ex. 7G at 1.  SWH and Mr. Sanford are not seeking to create coverage through waiver or estoppel.  On the contrary, Defendants seek to apply waiver and estoppel in their most traditional way:  to hold CSIC responsible for its failure to properly reserve its rights and/or set forth its coverage denial in a timely way.

The case upon which CSIC relies, *Walker v. American Ice Company*, 254 F. Supp. 736, 741 (D.D.C. 1966), *aff'd sub nom. National Union Fire Ins.Co. of Pittsburgh v. Aetna Cas. & Surety Co.*, 384 F.2d 316 (D.C. Cir. 1967), fully supports Defendants' position.  The court in *Walker* held that the insurer was estopped from denying coverage, specifically approving and relying upon the following rule:

> [I]f a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage.

*Id.*; *see also id.* at 742 ("National Union is precluded from asserting the exclusionary clause here involved.").

Here, the Malpractice Claims fall squarely within the terms of the Policy, and CSIC seeks to apply exclusionary language to disclaim coverage.  This is not a situation in which the insured is seeking to create coverage where none would otherwise exist.  CSIC has acknowledged coverage for the Howard Action Complaint and is estopped from now denying coverage.  The case law cited by CSIC does not support a contrary result.

## III.    CSIC HAS BREACHED ITS DUTY OF GOOD FAITH BY REFUSING TO NEGOTIATE A SETTLEMENT WITHIN POLICY LIMITS.

CSIC's assertion that it "was not presented with and did not reject a settlement demand within the $7 million limit of liability under the Policy" because the settlement demand made by counsel in the Howard Action "is for $8 million" (Reply at 12) is directly belied by the Settlement Proposal itself.

The Settlement Proposal was made jointly to SWH and its co-defendant in the Malpractice Action, Grant Morris, Esq., who is separately insured under a policy with $1 million in limits.  The Settlement Proposal specifically contemplated that SWH's insurer would fund no

more than the $7 million limits of the Policy and that Grant Morris' insurer would contribute its

$1 million limit:

> Should the Sanford firm prevail [in the coverage action], the carrier is exposed to a liability of no more than $7 million, and the defendants would be exposed to any amount awarded in excess thereof. At this point in time, plaintiffs would accept a global settlement of $8 million. ***This assumes that the Sanford firm and the carrier would each contribute ½ of the policy limits, and that Grant Morris's policy would contribute its [$1 million] policy limits***. …"

Opposition, Exhibit M (emphasis added).  Thus, the Settlement Proposal contemplated, ***at most***,

that CSIC pay its $7 million limit of liability under the Policy.  However, CSIC summarily

rejected Settlement Proposal and refused to pursue any further negotiations with the Clients,

thereby denying SWH the opportunity to settle within Policy limits.

## <u>CONCLUSION</u>

For the foregoing reasons, as well as the reasons set forth in the Opposition,

Defendants respectfully request that CSIC's Motion for Summary Judgment be denied.

Dated: April 21, 2011                              Respectfully submitted,


/s/Elisa Alcabes
Barry R. Ostrager (admitted *pro hac vice*)
Elisa Alcabes (admitted *pro hac vice*)
Courtney A. Welshimer (admitted *pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
bostrager@stblaw.com
ealcabes@stblaw.com
cwelshimer@stblaw.com

-and-

/s/ Stefanie Roemer
Stefanie Roemer, D.C. Bar No. 464450
SANFORD WITTELS & HEISLER, LLP
1666 Connecticut Avenue, N.W., Suite 310
Washington, D.C. 20009
Telephone: (212)742-7777
Facsimile: (202)742-7776
sroemer@swhlegal.com

*Counsel for Defendants Sanford Wittels &*
*Heisler, LLP and David W. Sanford*